UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ITT INDUSTRIES, INC.,

           Plaintiff,

                                        CASE NO. 1:05-CV-674

v.

                                        HON. ROBERT HOLMES BELL

BORGWARNER, INC. et al.,

           Defendants.

_____/


**OPINION**

       This is an action under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, seeking recovery of work-related response costs at two EPA-regulated Superfund sites in Bronson, Michigan, filed by ITT Industries, Inc. ("ITT") against Borgwarner, Inc., Kuhlman, Corp., and Bronson Specialties, Inc. (collectively, the "BorgWarner Defendants"); Royal Oak Industries, Inc.; and the Elmer Houghton Trust and Century Bank and Trust (collectively, the "Houghton Trust Defendants"). Plaintiff ITT Industries brings six causes of action under federal and state law. Count I alleges a cost recovery claim under CERCLA § 107(a), 42 U.S.C. § 9607(a). Count II alleges an action for contribution under CERCLA § 113(f)(3)(b), 42 U.S.C. § 9613(f)(3)(b). Count III raises a cost recovery claim under the Michigan Natural Resources and Environmental Protection Act ("NREPA Part 201"), MICH. COMP. LAWS § 324.20126. Count IV raises a contribution claim under NREPA Part 201, MICH. COMP. LAWS

§ 324.20129.  Count V is a state common law tort claim for public nuisance.  And Count VI seeks recovery under the state contribution statute, MICH. COMP. LAWS § 600.2529a.  All Defendants have filed motions to dismiss the complaint for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6).  For the reasons more fully discussed herein, Defendants' motions to dismiss with prejudice on Counts I and II are granted, and the remaining supplemental state law claims counts are dismissed without prejudice.

## I.

The instant action concerns costs incurred by ITT at two Superfund sites near Bronson, Michigan: (1) Operable Unit 1 ("OU1") at the North Bronson Former Facilities Site ("NBFF"); and (2) OU1 at the North Bronson Industrial Area Site ("NBIA").  Both sites are regulated by the federal Environmental Protection Agency ("EPA") and the Michigan Department of Environmental Quality ("MDEQ").  Defendants are all Potentially Responsible Parties ("PRPs") under CERCLA because they are either current owners or operators of the NBFF OU1 site or were owners or operators of the sites at the time of a disposal of hazardous substances.[1]  One of the BorgWarner Defendants (Bronson Specialties) currently owns a portion of the NBFF OU1 site.  The Houghton Trust Defendants are the successors of Elmer Houghton (deceased), who controlled the day-to-day operations at the

---

[1]There are four categories of PRP's: (1) the current owner or operator of a waste facility; (2) any previous owner or operator during any time in which hazardous substances were disposed at a waste facility; (3) any person who arranged for disposal or treatment of hazardous substances at the waste facility; and (4) any person who transported hazardous substances to a waste facility.  *See* 42 U.S.C. § 9607(a)(1)-(4).

2

(Old) Bronson Specialties, Inc. and Bronson Products Co, which operated the NBFF OU1 site.  Royal Oak Industries, Inc. d/b/a Bronson Precision Products Co., is a former operator of the NBFF OU1 site.

In March 2001, the MDEQ believed it discovered trichlorethene ("TCE") in the groundwater at NBFF OU1.  The EPA identified ITT as a PRP, and ITT entered into an Administrative Order by Consent with the EPA, which required it to investigate the suspected TCE contamination at NBFF OU1.  The Administrative Order by Consent also required ITT to look at any other remaining contaminants at the site and propose any necessary action.[2]

The resulting study (the "Streamlined Study") revealed that the source of any TCE was not the NBFF OU1 site. The Streamlined Study found minor amounts of other contaminants, none of which required further remediation.  ITT seeks to recover the $2 million it spent conducting the investigation and preparing the Streamlined Study.

The NBIA site involves an industrial sewer, a county drain and several lagoons, which were developed by the City of Bronson in 1939 to handle the plating wastes from Bronson Reel (predecessor to ITT and others), Darling Manufacturing and Douglas Manufacturing. In March 1999, ITT and several other companies who are not defendants in the instant action entered into a federal Consent Decree with the EPA.  ITT spent considerable sums in response costs, which it seeks to recover, in whole or in part, from Defendants.

_____

[2]Significant response actions previously had been undertaken at the sites, involving removal of large quantities of soils and other remediation actions.

3

## II.

Under Rule 12(b)(6), a complaint may be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).   The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001).  The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  However, the court need not accept as true legal conclusions or unwarranted factual inferences.  *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998).  A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).

## III.

Defendants assert that ITT fails to state a federal claim under either Count I or Count II.[3]  Because the action states no federal claim, Defendants contend that the supplemental state-law claims should be dismissed on jurisdictional grounds.  Defendants' arguments will be addressed in turn.[4]

### A.    Count I: CERCLA Cost Recovery

In Count I of its complaint, ITT asserts that it is entitled to recover its response costs from Defendants under CERCLA's cost recovery provision, § 107(a), 42 U.S.C. § 9607(a).  In *Centerior Service Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344 (6th Cir. 1998), the Sixth Circuit squarely held that a PRP is not entitled to bring a cost recovery action under § 107(a), 42 U.S.C. § 9607(a).  In *Centerior*, the court reasoned that § 107 cost recovery claims, which provide for joint and several liability, are not available to other potentially responsible parties, because any action by a PRP is, by its very nature, one for contribution,

---

[3]All of the Defendants raise the same arguments in support of their motions to dismiss, with the exception of the Houghton Trust Defendants.  While the Houghton Trust Defendants join the arguments of the other Defendants, Houghton Trust also contends that ITT's claim must be dismissed because, following the death of Elmer Houghton, ITT failed to file a notice of claim against the Trust within the four-month notice period of MICH. COMP. LAWS § 700.7506 (for notice of claims against an estate).  Specifically, the Houghton Trust Defendants claim that CERCLA does not preempt the Michigan claims notice statute, citing *California Fed. Sav. & Loan Assoc. v. Guerra*, 479 U.S. 272 (1987).  In light of the Court's conclusions regarding Plaintiff's federal claims, the Court need not and does not reach the preemption issue.

[4]Defendants also make numerous arguments why the individual state-law claims should be dismissed on the merits.  In light of the Court's determination, it need not reach those arguments.

leading only to several, not joint, liability.  Instead, the *Centerior* court held, all contribution

actions are controlled by CERCLA § 113, not § 107.  *Id.*  On its face, *Centerior* flatly bars

Plaintiff's claim under Count I of the complaint.  *Id.*; *see also City of Kalamazoo v. Michigan*

*Disp. Serv. Corp.*, 125 F. Supp. 2d 219, 242 (W.D. Mich. 2000) (explaining that a PRP may

not bring a § 107 action for joint and several cost recovery, but is limited to an action for

contribution governed by § 113).

      Plaintiff ITT strenuously argues, however, that the rationale of *Centerior* has been

undermined by the Supreme Court's holding in *Cooper Industries, Inc. v. Aviall Servs., Inc.*,

543 U.S. 157 (2004).  In *Cooper Industries*, the Supreme Court held that contribution actions

under § 113(f) are limited to those cases involving parties who had been subject to § 106 or

§ 107 civil actions or parties who had entered into an administratively or judicially approved

settlement.  Plaintiff argues that *Cooper Industries* erodes the *Centerior* rationale because,

unless they are permitted to bring § 107 cost recovery actions, some PRPs will have no

redress under federal law.  ITT argues that the *Cooper Industries* decision therefore implies

that PRPs must have either a private right of joint and several recovery under § 107 or an

implied right of contribution under the same provision, as had been held by some courts prior

to the 1986 statutory amendment adopting § 113.  *See Consol. Edison Co. v. UGI Utilities,*

*Inc.*, 423 F.3d 90, 98-100 (2d Cir. 2005) (articulating why the rationale of *Centerior* was less

persuasive after the Supreme Court's decision in *Cooper Industries*, but distinguishing rather

than overruling prior circuit precedent).

Even assuming ITT is correct that the rationale of *Centerior* may be less persuasive after *Cooper Industries*, *Cooper Industries* does not overrule *Centerior* in any way.  Indeed, the Supreme Court in *Cooper Industries* specifically declined to address whether PRPs have a cause of action under § 107 and it strongly suggested that no implied right of contribution exists under § 107.  *Cooper Industries*, 543 U.S. at 170-71.  Further, in reaching its decision, the Court declined to follow the dissenters' view that dicta in *Key Tronic Corp. v. United States*, 511 U.S. 809, 818 (1994), established the right of a PRP to bring a § 107 cost-recovery action.  *Cooper Indus.* at 170.  Taken together, the Supreme Court itself has expressed strong skepticism about the availability of § 107 to PRPs.

As a result, no direct conflict exists between *Centerior* and *Cooper Industries*.  This Court therefore remains bound by the Sixth Circuit's controlling decision in *Centerior*.  *See Exxon Mobil Corp. v. Fenelon*, 76 F. App'x 581, 595-96 (6th Cir. 2003) (intervening precedent not sufficiently clear to warrant overturning prior case); *Ameritrust Co., N.A. v. Calloway*, No. 93-3025, 1994 WL 399559, *2 (6th Cir. Aug. 1, 1994) ("Speculation regarding a future Supreme Court holding is not sufficient to overrule an existing Sixth Circuit precedent."); *United States v. Seltzer*, 794 F.2d 1114, 1123 (6th Cir. 1986) (only an *en banc* court may overrule circuit precedent absent an intervening Supreme Court decision or change in the applicable law).  Where, as here, no intervening Supreme Court decision overrules controlling circuit precedent, it is for the Sixth Circuit to determine the continued viability of the rationale and holding of *Centerior*, 153 F.3d 344.

7

The Court recognizes that *Cooper Industries* and *Centerior,* when read together, may prevent certain PRPs from recovering under either § 107 or § 113.   However, the unvailability of a federal cause of action is not itself a reason for a court to engage in expansive statutory interpretation.   Indeed, in *Cooper Industries*, the Supreme Court specifically acknowledged that its holding narrowed possible avenues of recovery for PRPs, and it recognized that its holding ran counter to the expectations of many, including some legislators.   *Cooper Indus.*, 543 U.S. at 167.   As the Court reiterated, however, "'it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed.'"   *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998)).

Plaintiff next argues that *Centerior* may be distinguished on its facts.   In *Centerior*, ITT argues, the plaintiff performed response actions pursuant to a § 106 unilateral administrative order, a requirement that was forced upon it by the threat of EPA sanctions. Here, in contrast, ITT incurred costs pursuant to an administrative order by consent, in which ITT specifically declined to admit liability.   (Administrative Order by Consent: Resp. to Def. BorgWarner's motion to dismiss, Docket #35, Ex. A, at 2.)   ITT argues that, because there exists a significant difference between a negotiated agreement and a unilateral order, the procedural framework of *Centerior* is different from that of ITT.   According to Plaintiff, where a PRP has initiated work "voluntarily" rather that by threat of sanctions, it should be permitted to recover from other PRPs in a § 107 cost recovery action.

In support of its position, Plaintiff relies on the following footnote from *Centerior*:

8

> This case does not involve a PRP who initiated cleanup voluntarily without any governmental prodding, and we express no opinion with regard to such a party's right to seek joint and several cost recovery. We also do not rule on whether an "innocent" PRP who has not contributed to site contamination may nevertheless seek joint and several cost recovery.

*Centerior*, 153 F.3d at 351 n.10. The reservation in *Centerior*, however, does not provide an adequate basis for distinguishing Plaintiff's conduct in the instant case from the conduct in issue in *Centerior*. Here, as in *Centerior*, Plaintiff did not act in a truly voluntary fashion, that is, "without governmental prodding." *Id.* Although ITT was not unilaterally ordered to conduct the Streamlined Study, the administrative order by consent, by its terms, was undertaken only at the prodding of the EPA after Plaintiff was identified as a PRP. *See Centerior*, 153 F.3d at 354 (noting that parties that expend response costs at the prodding of the government are not truly innocent parties that "come forward in an effort to initiate a site cleanup"). The only question left open by the *Centerior* court was "whether volunteers, or parties who are truly innocent, may seek joint and several cost recovery, thereby encouraging voluntary cleanups." *Id.* at 354.

In the instant case, Plaintiff does not dispute that it is a PRP under § 107(a). Instead, it implies that it is "innocent" relative to other PRPs, presumably because it only acquired its status as a PRP following its merger with a company that had previously operated a facility at the site during times of disposal of hazardous wastes but had sold the facility before the ITT merger. However, to accept Plaintiff's "innocence" argument would be to undermine the fundamental principle of strict liability upon which CERCLA rests. *Cf. Kalamazoo River Study Group v. Menasha Corp.*, 228 F.3d 648, 657 (6th Cir. 2000) (noting that CERCLA's

9

strict liability standard does not permit distinctions based on relative responsibility for purposes of determining liability under either § 107 or § 113).  What matters under § 107 is whether a person is potentially liable under § 107(a).  *Id.*  Because Plaintiff does not fall within the reservation of *Centerior* for innocent persons who engage in a truly voluntary cleanup of a site, the unequivocal holding of *Centerior*, which bars PRPs from cost-recovery actions under § 107, controls this case.

In sum, under *Centerior*, the allegations of Plaintiff's complaint do not state a CERCLA § 107 claim.  Accordingly, the Court will dismiss with prejudice Count I of the complaint for failure to state a claim.

     B.    <u>Count II: CERCLA Contribution</u>

Defendants argue that ITT also fails to state a cause of action for contribution under CERCLA § 113(f).  Section 113(f) provides in relevant part:

(1) Contribution

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.  Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.  Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

(2) Settlement

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims

for contribution regarding matters addressed in the settlement.  Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

(3) Persons not party to settlement

. . .

(B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

42 U.S.C. § 9613(f).

### 1.    NBIA Site

Plaintiff's claim for contribution at the NBIA site arises from the 1999 Consent Decree with the EPA.  The statute of limitations for a contribution claim under § 113, however, is three years from ". . . entry of a judicially approved settlement with respect to such costs or damages."  42 U.S.C. § 9613(g)(3).  Since the instant action was not filed until September 2005, the § 113 contribution action for the NBIA site is time-barred.  Plaintiff ITT has conceded this claim both at oral argument and in its surreply brief (Docket #48, at 4-5) to the BorgWarner Defendants' motion to dismiss.

11

### 2.    NBFF Site

Defendants argue that the § 113(f) claim based on the NBFF site is barred because the administrative order by consent order between ITT and the EPA was not the type of "administrative or judicially approved settlement" described by 42 U.S.C. § 9613(f)(3)(B).[5] In *Cooper Industries*, the Supreme Court squarely held that § 113 provides only two "avenues for contribution: § 113(f)(1) ('during or following' specified civil actions) and § 113(f)(3)(B) (after an administrative or judicially approved settlement that resolves liability to the United States or a State)." *Cooper Indus.*, 543 U.S. at 167.  The Court declared that a contribution action under § 113(f) is available only for claims that meet one of those two enumerated requirements, in part because a broader construction of the provision would be at odds with the statute of limitations provision of § 113, which provides a limitations period only for the specific claims described in §§ 113(f):

> Notably absent from § 113(g)(3) is any provision for starting the limitations period if a judgment or settlement never occurs, as in the case with a purely voluntary cleanup.  The lack of such a provision supports the conclusion that, to assert a contribution claim under § 113(f), a party must satisfy the conditions of either § 113(f)(1) or § 113(f)(3)(B).

*Id.* at 167-68.

---

[5]Defendants also argue that the claim should be dismissed because Plaintiff's own Streamlined Study unequivocally showed that the TCE contamination, which caused ITT to undertake its study and incur response costs, did not originate from the NBFF OU1 site. Defendants assert that consideration of the study, which is referenced in the allegations of the complaint, is permissible on a motion pursuant to FED. R. CIV. P. 12(b)(6) without converting the motion into one for summary judgment.  In light of the Court's determination regarding the availability of a remedy under 42 U.S.C. § 9613(f), the Court does not reach Defendants' factual argument.

In the instant case, the administrative order by consent cannot be construed an administrative settlement within the meaning of CERCLA § 113(f)(3)(B).  *See Pharmacia Corp. v. Clayton Chem. Acq., LLC*, 382 F. Supp. 2d 1079, 1084-86 (S.D. Ill. 2005) (holding that an administrative order by consent is not a settlement under § 113(f)(3)(B)).  Section 113(f)(3)(B) explicitly provides that contribution is available only to "a person who has resolved its liability to the United States or a State . . . ."  42 U.S.C. §4613(f)(3)(B).  The consent order does not purport to resolve any party's liability – not ITT's, not the United States' and not that of any State.  *Consol. Edison*, 423 F.3d at 96-97 (finding that Voluntary Cleanup Agreement was not a settlement under § 113(f)(3)(B) because it did not resolve CERCLA liability with any party).  Indeed, ITT expressly concedes this point in another section of its brief, stating as follows:

> There has been no final settlement of liability between ITT and the U.S. EPA or of any other environmental agency regarding the investigation and remediation of the contaminated sites.  Indeed, the U.S. EPA gives up nothing regarding potential claims against ITT or any other entity.  The AOC requires ITT to conduct the SRI/FFS, but does not release ITT of further liability at the NBFF OU1 site.

(Pl. Br. in Resp. to Def. BorgWarner's Mot. to Dismiss, Docket #35, at 50.)  Rather than a final settlement, the administrative order by consent, is an interim agreement between ITT and the United States that resolves no liability and is not described by 42 U.S.C. § 9613(f).  *See Pharmacia Corp.*, 382 F. Supp. 2d at 1084-86 (administrative order by consent is not settlement under § 113(f)(3)(B)); *City of Waukesha v. Viacom Int'l Inc.*, 404 F. Supp. 2d 1112, 1117 (E.D. Wis. 2005) (settlement that does not conclusively resolve liability is not

settlement under § 113(f)(3)(B), notwithstanding parties own declarations to contrary).
Under the plain language of § 113(f)(3)(B), therefore, the administrative order by consent
is not a "settlement" subject to contribution. *See Cooper Indus.*, 543 U.S. at 166 ("There is
no reason why Congress would bother to specify conditions under which a person may bring
a contribution claim, and at the same time allow contribution actions absent those
conditions.").

In addition, while § 113(f) does not precisely define what constitutes "an
administrative or judicially approved settlement," the Supreme Court has made it clear that
the courts must read the right to contribution under CERCLA § 113(f) in conjunction with
the statute of limitations for such contribution actions, as set forth in § 113(g)(3). *See
Cooper Indus.*, 543 U.S. at 167. Section 113(g)(3)(B) specifically references the kinds of
administrative settlements addressed by § 113(f):

> (3) Contribution
>
> No action for contribution for any response costs or damages may be
> commenced more than 3 years after –
>
> . . .
>
> **(B)** The date of an administrative order under section 9622(g) of this
> title (relating to de minimis settlements) or 9622(h) of this title (relating
> to cost recovery settlements) or entry of a judicially approved
> settlement with respect to such costs or damages.

42 U.S.C. § 9613(g)(3)(B). Reading the statutory section as a whole, as the Court must after
*Cooper Industries*, § 113(f)'s reference to administrative settlements must be construed as
referring only to those settlements identified in § 113(g)(3)(B): that is, settlements made

14

pursuant to §§ 122(g) and (h).   *Cf. Cooper Indus.*, 543 U.S. at 167-68 (holding that settlements not falling within the description of § 113(g)(3)(B) were not covered by § 113(f) because such conduct would not trigger the running of the statute of limitations under § 113(g)(3)(B)).

The administrative order by consent in issue here does not fall under either § 122(g) or § 122(h). Section 122(g) applies only to *de minimis* settlements, a designation impossible to square with the costs in issue here, which exceed $2 million. In addition, to qualify as a § 122(g) settlement, the settlement must be a "final settlement with a potentially responsibly party in an administrative . . . action . . . ." 42 U.S.C. § 9622(g)(1). Again, Plaintiff concedes that the order of consent is not "final" in any sense, as it does not terminate any party's liability.

Moreover, all settlements under § 122(g) or § 122(h), must meet the notice-and-comment procedures set forth in § 122(i), which require publication in the Federal Register and opportunity for persons who are not parties to the settlement to make comments. *See* 42 U.S.C. § 9622(i). Plaintiff does not assert that the § 122(i) procedures were followed for the administrative order at issue in the instant case. As a result, Plaintiff fails to allege the existence of an administrative settlement entitling it to seek contribution under § 113(f).

In its surreply brief and at oral argument, Plaintiff argued that the administrative order of consent more properly is considered an administratively approved settlement under § 122(a) rather than under § 122(g) or (h). Plaintiff argues that the notice-and-comment procedures of § 122(i) do not apply to agreements under § 122(a). As a result, Plaintiff

contends, monies expended to comply with the instant order of consent should be considered eligible for contribution under § 113(f), despite the absence of notice-and-comment procedures.

Plaintiff's argument is without merit. As previously noted, only administrative settlements reached under § 122(g) or (h) are referenced under the statute of limitations provision of § 113(g)(3)(B). The Supreme Court has held that the descriptions recited under § 113(g)(3)(B) define the kinds of contribution claims available under § 113(f). *Cooper Indus.*, 543 U.S. at 167. Accepting Plaintiff's assertion that the administrative order of consent in issue here is an agreement under CERCLA § 122(a), § 122(a) agreements are not the types of settlements that permit a contribution action under § 113(f) because they are not referenced under § 113(g)(3)(B).[6]

For all the stated reasons, Plaintiff fails to state a claim for contribution under 42 U.S.C. § 9613(f). Count II of the complaint therefore will be dismissed.

C.     State-law Claims

Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits. *See Landefeld v. Marion General*

---

[6]The Court also notes that agreements made under § 122(a), while not requiring the procedures of § 122(i) be followed, requires that "[i]f the President decides not to use the procedures in this section, the President shall notify in writing potentially responsible parties at the facility of such decision and the reasons why use of the procedures is inappropriate." Plaintiff has not alleged that such notification occurred.

16

*Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of North Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991); *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998). Accordingly, Plaintiff's state-law causes of action will be dismissed without prejudice.

## IV.

For the foregoing reasons, Counts I and II of Plaintiff's complaint will be dismissed for failure to state a claim. Having dismissed both of Plaintiff's federal claims, the Court declines to exercise jurisdiction over Plaintiff's remaining state-law claims. Counts III through VI therefore will be dismissed without prejudice.

Dated:    August 22, 2006          /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    CHIEF UNITED STATES DISTRICT JUDGE

17