UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
<u>SOUTHERN DIVISION</u>

ITT INDUSTRIES, INC., a Delaware corporation,                    Case No. 1:05-CV-0674

      Plaintiff/Counter-Defendant,                    Honorable Robert Holmes Bell

v.

BORGWARNER INC., a Delaware corporation;          **BRIEF OF THE BRONSON**
KUHLMAN CORPORATION, a Delaware corporation;      **DEFENDANTS (BORGWARNER**
BRONSON SPECIALTIES, INC., a Michigan             **INC., KUHLMAN CORPORATION,**
corporation,                                      **AND BRONSON SPECIALTIES,**
                                                  **INC.) IN SUPPORT OF MOTION**
      Defendants/Counter-Plaintiffs/            **FOR (1) SUMMARY JUDGMENT**
      Cross-Plaintiffs/Cross-Defendants,       **ON ITT'S CLAIM FOR COST**
                                                  **RECOVERY INVOLVING THE**
                                                  **NBFF OU1 SITE, AND**
and                                               **(2) DISMISSAL OF ITT'S CLAIM**
                                                  **FOR COST RECOVERY**
ROYAL OAK INDUSTRIES, d/b/a BRONSON                **INVOLVING THE NBIA SITE**
PRECISION PRODUCTS, a Michigan corporation,

      Defendant/Counter-Plaintiff/
      Cross-Defendant/Cross-Plaintiff           **ORAL ARGUMENT REQUESTED**

and

THE SCOTT FETZER COMPANY, a Delaware
corporation,

      Defendant/Cross-Defendant/Cross-Plaintiff
_____/

BORGWARNER INC., a Delaware corporation;
KUHLMAN CORPORATION, a Delaware corporation;
BRONSON SPECIALTIES, INC., a Michigan
corporation; ROYAL OAK INDUSTRIES, d/b/a
BRONSON PRECISION PRODUCTS, a Michigan
corporation,

      Third-Party Plaintiffs,

v.

L.A. DARLING CO., a Delaware corporation,

      Third-Party Defendant.

# QUESTIONS PRESENTED

*North Bronson Former Facility Site, Operable Unit 1 (NBFF OU1 Site)*

1(a).    To prove a claim under CERCLA Section 107, ITT must demonstrate that the Bronson Defendants[1] are responsible for a release that caused ITT to incur response costs.  ITT incurred $2 million investigating suspected TCE contamination at the NBFF OU1 site; however, the resulting study found conclusively that the release which caused the investigation did not come from the Bronson Defendants' site, but rather from nearby sites.  No discovery can change that fact.  Are the Bronson Defendants entitled to summary judgment on ITT's Section 107 claim for the NBFF OU1 site?

The Bronson Defendants answer:  Yes.

1(b).    CERCLA Section 107 states that a defendant in a cost recovery action shall not be liable if a third party caused the release or threat of release that resulted in response costs.  ITT's study of the NBFF OU1 site concluded that the release which caused ITT to incur response costs came from the nearby LA Darling and Scott Fetzer sites.  No discovery can change that fact.  Are the Bronson Defendants entitled to summary judgment on ITT's Section 107 claim for the NBFF OU1 site?

The Bronson Defendants answer:  Yes.

*North Bronson Industrial Area Site (NBIA Site)*

The Sixth Circuit affirmed this Court's dismissal of ITT's CERCLA Section 113 contribution claim for response costs incurred at the NBIA site, because ITT's claim was barred by the three-year statute of limitations.  The Sixth Circuit then remanded for this Court to determine, in the first instance, whether ITT could state a CERCLA Section 107 claim after the Supreme Court's intervening decision in *United States v. Atlantic Research*, 127 S. Ct. 2331 (2007):

> Plaintiff, as a PRP, **may** now state a claim for cost recovery . . . .  We find it prudent to remand this action to the district court for further consideration in light of the Supreme Court's decision in *Atlantic Research*.  **We express no opinion as to how Plaintiff's cost recovery action ultimately should be resolved**.  Rather, **we leave it to the district court to entertain this question in light of** *Atlantic Research*.

*ITT Indus., Inc. v. BorgWarner, Inc.*, 506 F.3d 452, 458 (6th Cir. 2007) (emphasis added).  This remand directive raises the following additional question:

---

[1] The Bronson Defendants are BorgWarner Inc., its subsidiary Kuhlman Corporation, and Kuhlman's subsidiary, Bronson Specialties, Inc.  The Bronson Defendants were referred to as the BorgWarner Defendants before the Sixth Circuit remanded the case back to this Court.

2.    ITT seeks contribution for costs it incurred under a Consent Decree which settled an action that the EPA filed against ITT under CERCLA Sections 106 and 107.  It is undisputed that ITT could have sought contribution by filing a CERCLA Section 113 claim, but that claim is now barred by the statute of limitations.  May ITT evade the statute of limitations by bringing a contribution claim under the guise of Section 107?

The Bronson Defendants answer:  No.

The United States, as *amicus curiae* in the Sixth Circuit, answered:  No.

# TABLE OF CONTENTS

Page

QUESTIONS PRESENTED.................................................................................. i

TABLE OF AUTHORITIES ................................................................................. v

INTRODUCTION .................................................................................................. 1

FACTUAL SUMMARY ......................................................................................... 2

SUMMARY OF PROCEEDINGS ......................................................................... 4

DISCUSSION ........................................................................................................ 5

I.  THE RELEASES WHICH CAUSED ITT TO INCUR RESPONSE
    COSTS AT THE NBFF OU1 SITE ORIGINATED AT THE NEARBY
    LA DARLING AND SCOTT FETZER SITES.  ACCORDINGLY, THE
    BRONSON DEFENDANTS ARE ENTITLED TO SUMMARY
    JUDGMENT ON ITT'S SECTION 107 CLAIM REGARDING NBFF
    OU1......................................................................................................................5

II. ITT'S SECTION 107 CLAIM AGAINST THE BRONSON
    DEFENDANTS FOR THE NBIA SITE FAILS TO STATE A CLAIM
    UPON WHICH RELIEF CAN BE GRANTED, FOLLOWING THE
    SUPREME COURT'S DECISION IN *ATLANTIC RESEARCH*. ...........................7

    A.  After *Atlantic Research*, a party who has incurred response costs as
        a result of a government lawsuit filed under CERCLA Sections
        106 or 107 may seek contribution only by way of CERCLA
        Section 113.................................................................................................7

        1.  The plain language of CERCLA Sections 107 and 113
            demonstrates that ITT is limited to a claim for contribution
            under Section 113 for compelled costs of response.........................8

        2.  The Supreme Court's opinion in *Atlantic Research* strongly
            suggests that a party who enters into a consent decree with
            the government may pursue contribution against non-
            settling parties, but only by filing a claim under Section
            113...................................................................................................9

        3.  Allowing ITT to choose to bring its Section 113 claim
            under Section 107 would nullify Section 113's limitations
            period and allocation structure.....................................................11

        4.  CERCLA's statutory framework and legislative history
            support the result that ITT is limited to its Section 113
            claim...............................................................................................12

        5.  There is no language in *Atlantic Research* that upsets the
            uniform conclusion of the federal circuits that a party
            subject to CERCLA liability is limited to seeking
            contribution in accord with Section 113(f). ..................................13

6.     The only post-*Atlantic Research* and post-*ITT* decision addressing this issue held that a party in ITT's position was limited to pursuing a Section 113 contribution claim....................14

B.     ITT's Section 107 claim for the NBIA site is also barred under the Sixth Circuit's holding in *Centerior*, a case which the Supreme Court in *Atlantic Research* did not abrogate in fact or by implication. ................................................................................................15

III.     ITT'S REMAINING STATE LAW COUNTS SHOULD ALSO BE DISMISSED, EITHER WITHOUT PREJUDICE UNDER 28 U.S.C. § 1367, OR WITH PREJUDICE BECAUSE THEY FAIL TO STATE CLAIMS UNDER STATE LAW. .......................................................................16

CONCLUSION...............................................................................................................17

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Akzo Coatings, Inc. v. Aignor Corp.*
    30 F.3d 761 (7th Cir. 1994) .......................................................................................... 13

*Atlantic Research Corp. v. United States*
    459 F.3d 827 (8th Cir. 2006) ...................................................................................... 9, 14

*Bedford Affiliates v. Sills*
    156 F.3d 416 (2d Cir. 1998) ......................................................................................... 13

*Bell Atlantic Corp. v. Twombly*
    ___ U.S. ___, 127 S. Ct. 1955 (2007).......................................................................... 7

*Celotex v. Catrett*
    477 U.S. 317 (1986)....................................................................................................... 5

*Centerior Service Co. v. Acme Scrap Iron & Metal Corp.*
    153 F.3d 344 (6th Cir. 1998) .................................................................................. 15, 16

*Commercial Money Center, Inc. v. Illinois Union Insurance Co.*
    508 F. 3d 327 (6th Cir. 2007) ....................................................................................... 7

*Control Data Corp. v. S.C.S.C. Corp.*
    53 F.3d 930 (8th Cir. 1995) .......................................................................................... 13

*ITT Industreies, Inc. v. BorgWarner, Inc.*
    506 F.3d 452 (6th Cir. 2007) ......................................................................... i, 4, 5, 10, 14, 16

*Mezibov v. Allen*
    411 F. 3d 712 (6th Cir. 2005) ....................................................................................... 7

*New Castle County v. Halliburton NUS Corp.*
    11 F.3d 1116 (3d Cir. 1997) ......................................................................................... 13

*New York v. Next Millennium Realty, LLC*
    2008 WL 1958002 (E.D.N.Y. May 2, 2008) ............................................................... 14

*Regional Airport Authority of Louisville v. LFG, LLC*
    460 F.3d 697 (6th Cir. 2006) ......................................................................................... 6

*Street v. J.C. Bradford & Co.*
    886 F.2d 1472 (6th Cir. 1989) ...................................................................................... 5

*United States v. Atlantic Research*
    127 S. Ct. 2331 (2007)..................................................................................... i, 5, 8, 10, 11, 16

*United States v. Colorado & Eastern Railroad Co.*
  50 F.3d 1530 (10th Cir. 1995) ............................................................. 13

*United States v. Taylor*
  909 F. Supp. 355 (M.D.N.C. 1995) ........................................................ 9

*United Technologies Corp. v. Browning-Ferris Industries, Inc.*
  33 F.3d 96 (1st Cir. 1994) ............................................................. 9, 13

## **Other Authority**

42 U.S.C. § 9607(a) .......................................................................... 9

42 U.S.C. § 9613(f) .......................................................................... 11

42 U.S.C. § 9613(f)(1) ....................................................................... 8

42 U.S.C. § 9613(f)(3)(B) .................................................................... 9

42 U.S.C. § 9613(f)(a) ...................................................................... 11

42 U.S.C. §§ 9613(g)(2)-(3) ................................................................. 11

## **Miscellaneous**

131 Congressional Record
  H11086 (December 5, 1985) (statement of Rep. Glickman) ................................... 12

1986 U.S.C.C.A.N. ........................................................................... 12

House of Representatives Report No. 99-253(I) .............................................. 12

## INTRODUCTION

This is an action under CERCLA, seeking recovery of response costs at two EPA-regulated Superfund sites in Bronson, Michigan, defined in this Court's previous opinion as the "NBFF OU1" and "NBIA" sites. In the initial complaint, Plaintiff ITT Industries, Inc. ("ITT"), pled claims for each site under CERCLA Sections 107 (cost recovery) and 113 (contribution), and under various state law theories. This Court dismissed all of the CERCLA claims and dismissed the supplemental law claims without prejudice.

The Sixth Circuit affirmed dismissal of the Section 113 claims; however, it remanded the Section 107 claims for further consideration in light of the Supreme Court's intervening decision in *United States v. Atlantic Research Corp.*, 127 S. Ct. 2331 (2007). ITT recently filed its amended complaint, which reasserts the Section 107 claims involving the NBIA Site and the NBFF OU1 site (Count I), as well as state law claims under NREPA (Counts II and III).

The Bronson Defendants[2] now move for judgment as a matter of law on ITT's new Count I. The Bronson Defendants are entitled to summary judgment with respect to the NBFF OU1 site, because ITT's own study establishes that the Bronson Defendants were not responsible for the TCE release that caused ITT to incur response costs. No amount of discovery can change that fact. The Bronson Defendants are also entitled to dismissal under Fed. R. Civ. P. 12(c) with respect to the NBIA site. ITT's attempt to circumvent Section 113's statute of limitations and allocation structure by recasting its claim under Section 107 fails as a matter of law under the statutory language, the Supreme Court's decision in *Atlantic Research*, and other authorities.

---

[2] The Bronson Defendants are BorgWarner Inc., its subsidiary Kuhlman Corporation, and Kuhlman's subsidiary, Bronson Specialties, Inc., which owns the NBFF OU1 site. Because ITT has styled its contribution claim as a Section 107 cost recovery action, the Bronson Defendants have been compelled to file Section 113 counterclaims, cross-claims, and third-party claims.

# FACTUAL SUMMARY

## *The NBFF OU1 Site*

The costs ITT seeks to recover at the NBFF OU1 site arose out of an EPA Administrative

Order of Consent ("AOC"), which required ITT to investigate suspected TCE contamination.

(8/23/06 Op at 3.)  Specifically, the EPA directed that "remaining work [at the site] should focus

on determining if a source for trichloroethene (TCE) in groundwater exists at OU1."  (Ex. A,

AOC, at 2.)  Confirming that directive, ITT's study describes TCE –based on a single anomalous

data point—as the reason that further investigation was necessary:

> [B]ased on [test location] GPW4, there was some suggestion that a TCE source
> might exist at the former Bronson Reel facility and that additional investigation
> was needed to determine if the Site was the source of this TCE.  **It was this
> single, anomalously high VOC data point at this location north of the Site
> that was the <u>impetus</u> for the comprehensive SRI/SRA groundwater
> investigation of the Site.**

(Ex. B, ITT Study, at 1-10 to 1-11 (emphasis added); Ex. C, *accord* Statement of Work, at 3

(reiterating that the "two" objectives of the Streamlined Remedial Investigation and Focused

Feasibility Study ("SRI/FFS") are to determine if an on-site source has produced TCE contam-

ination in groundwater at and near OU1, and to define downgradient TCE concentrations).)

Following a comprehensive investigation, ITT's experts determined that NBFF OU1 was

not the source of TCE at all; the TCE came from the nearby former LA Darling and Scott Fetzer

sites.  (8/23/06 Op at 3; ITT Study at 5-3 to 5-7.)  Both the EPA and the MDEQ agreed with

ITT's determination.  (Ex. D, EPA Notice, at 2, (concluding that the NBFF OU1 site "is not a

source of TCE contamination in ground water," and that "soil contamination levels . . . meet

Michigan standards for industrial and commercial properties."); Ex. E, MDEQ Report at 2,

("[T]he former Bronson Reel Company is not contributing to the TCE contamination in

groundwater at this site.").)  Indeed, the only further remedial action the EPA recommended for

the site was a restrictive covenant on the property deed—held by Bronson Specialties, Inc.—that required further assessment if building foundations were ever removed and soil exposed.[3]  (Dkt. 88, Tab 1 at 17, EPA Record of Decision.)

With its study results in hand, ITT recognized that but for the LA Darling and Scott Fetzer releases, ITT would not have incurred response costs at NBFF OU1:

> [B]ut for these releases from L.A. Darling and Scott Fetzer, which have migrated in groundwater to the Bronson Specialties, Inc. Property, ITT would not have been required to conduct such an extensive RI/FS or would not have been required to expend response costs **at all** related to OU1 of the NBFF Site.

(Ex. F, 9/12/05 ITT Ltr. to LA Darling, at 1 (emphasis added).)  But, when ITT filed its complaint two weeks later, it inexplicably chose not to sue LA Darling and Scott Fetzer.  It sued the Bronson Defendants and Royal Oak Industries instead.  The first question presented is whether ITT can shift liability under CERCLA Section 107 to parties who had no connection to the releases or threats of releases that caused ITT to incur response costs at NBFF OU1.

*The NBIA Site*

The NBIA sites involves an industrial sewer, a county drain, and several lagoons, developed by the City of Bronson in 1939 to handle industrial wastes from Bronson Reel (predecessor to ITT and others), Darling Manufacturing, and Douglas Manufacturing.  (8/23/06 Op at 3.)  Following the EPA's initiation of an action under CERCLA Sections 106 and 107, ITT, The Scott Fetzer Company, LA Darling Company, and others entered into a federal Consent Decree with the EPA.  (First Am. Compl. ¶ 53; Ex. G, Consent Decree.)  ITT alleges that it has

---

[3] Although the purpose of ITT's study was to "evaluate whether there is a source of TCE at NBFF OU1" (ITT Study at 5-9), the samples provided sufficient data to incidentally evaluate non-TCE substances as well (*id.*).  Given that the Bronson Defendants had already remediated the property for other substances by removing 70 percent of the exposed soils (*id.* at 1-6), it was no surprise that the study found that no other substance required additional remediation (8/23/06 Op. at 3).

incurred and will continue to incur costs in furtherance of its obligations under this Consent Decree.  (*Id.* ¶¶ 54-55.)

Both this Court and the Sixth Circuit have already held that ITT's Section 113 contribution claim for the NBIA site is barred by the applicable statute of limitations.  *ITT Indus., Inc. v. BorgWarner, Inc.*, 506 F.3d 452, 459 n.3 (6th Cir. 2007) ("Plaintiffs entered into the Consent Decree in March 1999, and filed the suit at hand in September 2005.  Accordingly, the district court correctly concluded that Plaintiff's § 113 claim with respect to the NBIA Site was out of time.").)  So ITT is now trying to shoehorn its contribution action into CERCLA Section 107 instead.  By asserting its claim under Section 107, ITT not only circumvents the statute of limitations but seeks to transfer the <u>entire</u> cost of ITT's remediation to the Bronson Defendants without regard for comparative fault.  The second question presented is whether ITT is permitted to circumvent Section 113's statute of limitations—as well as Section 113's allocation structure—by recasting its claim under Section 107.

## SUMMARY OF PROCEEDINGS

In this Court's previous opinion, it (1) dismissed ITT's Section 113 claim for the NBIA site based on the statute of limitations; (2) dismissed ITT's Section 113 claim for the NBFF OU1 site because the AOC did not resolve CERCLA liability and did not constitute a settlement under CERCLA § 113(f)(3)(B); and (3) dismissed ITT's Section 107 claims for both sites under the rationale of *Centerior Service Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344 (6th Cir. 1998).  This Court declined the invitation to hold, in the alternative, that ITT's claims against the Bronson Defendants for the NBFF OU1 site were barred by the Streamlined Study, *id.* at 12 n.5, a decision the Sixth Circuit chose not to disturb given the procedural posture:  a motion to dismiss for failure to state a claim, *ITT Indus.,* 506 F.3d at 458 n.2.

The Sixth Circuit affirmed dismissal of the Section 113 claims, *ITT Indus.,* 506 F.3d at 459-61, and it remanded the Section 107 claims for further consideration in light of the Supreme Court's intervening decision in *Atlantic Research*. *Id.* at 457-58. In *Atlantic Research*, the Supreme Court held that cleanup costs incurred **voluntarily** by a PRP are recoverable under Section 107. 127 S. Ct. at 2335, 2338 n.6. But the Court specifically disclaimed any opinion as to the situation presented by ITT's Section 107 claim for the NBIA site: whether "**compelled** costs of response are recoverable under § 113(f), § 107(a), or both," *id.* at 2338. In light of *Atlantic Research*, the Sixth Circuit acknowledged that an involuntary PRP like ITT "**may**" be able to state a claim, but it ultimately delegated to this Court the respon-sibility to determine what effect the *Atlantic Research* decision has on ITT's Section 107 claim:

> Plaintiff, as a PRP, **may** now state a claim for cost recovery upon which relief can be granted. Therefore, we find it prudent to remand this action to the district court for further consideration in light of the Supreme Court's decision in *Atlantic Research*. **We express no opinion as to how Plaintiff's cost recovery action ultimately should be resolved.** Rather, **we leave it to the district court to entertain this question in light of** *Atlantic Research*.

*ITT Indus.,* 506 F.3d at 458 (emphasis added). The Bronson Defendants now renew their request for judgment as a matter of law.

## DISCUSSION

I.  **The releases which caused ITT to incur response costs at the NBFF OU1 site originated at the nearby LA Darling and Scott Fetzer sites. Accordingly, the Bronson Defendants are entitled to summary judgment on ITT's Section 107 claim regarding NBFF OU1.**

Standard of Review:  Federal Rule of Civil Procedure 56 is designed to avoid unnecessary trials when no issue of genuine fact is in dispute, with a view to facilitate just, prompt, and inexpensive determination of every action. Once the moving party demonstrates the absence of a material and triable issue of fact, the burden shifts to the nonmoving party to show a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The nonmoving party must do more than rely upon allegations, but must come forward with admissible evidence demonstrating a disputed fact. *Street*, 886 F.2d at 1479.

5

A prima facie case for recovery under CERCLA Section 107(a) has four elements: (1) a property that is a "facility," (2) a "release" or "threatened release" of a hazardous substance; (3) the release has caused the plaintiff to incur "necessary costs of response" "consistent" with the NCP, and (4) the defendant is one of four categories of PRPs. *Regional Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2006). This motion for summary judgment focuses on the third factor, the requirement that a plaintiff show a defendant's release or threatened release "caused the plaintiff to incur 'necessary costs of response.'" *Id.* at 703.

No additional amount of factual development in this case can show that a release or threatened release of the Bronson Defendants "caused" ITT to incur response costs at NBFF OU1. Quite the opposite—ITT's own experts, the MDEQ, and the EPA are in unanimous agreement that the releases which caused ITT to incur response costs came not from any site owned or operated by the Bronson Defendants, but from the nearby LA Darling and Scott Fetzer sites. (ITT Study at 5-3 to 5-7; MDEQ Report at 2; EPA Notice at 2.) That is why ITT conceded in correspondence that but for the LA Darling and Scott Fetzer releases, it is likely that ITT would not have had to incur response costs at NBFF OU1 at all. (9/12/05 ITT Ltr to LA Darling at 1.) Because ITT is unable to satisfy its prima facie Section 107 case, the Bronson Defendants are entitled to summary judgment on Count I as it relates to the NBFF OU1 site, leaving ITT free to pursue LA Darling and Scott Fetzer, the parties responsible for the releases that caused ITT to incur response costs.

The flip side of a plaintiff's obligation to prove that a defendant's release caused the plaintiff to incur response costs is 42 U.S.C. § 9607(b)(3). That provision excuses a defendant from any Section 107 liability if it is established that a third party was solely responsible for the release or threatened release which caused the plaintiff to incur response costs. The sole "impetus" for ITT's response costs were TCE releases (Ex. B, IIT Study, at 1-10 to 1-11), now

6

known to have no connection at all with the NBFF OU1 site. Again, there is no material dispute of fact, and no amount of discovery can change that conclusion. For this separate and independent reason, the Bronson Defendants are again entitled to summary judgment on that portion of ITT's Count I that seeks cost recovery for the NBFF OU1 site.

## II.     ITT's Section 107 claim against the Bronson Defendants for the NBIA site fails to state a claim upon which relief can be granted, following the Supreme Court's decision in *Atlantic Research*.

Standard of Review:  The standard for assessing a Rule 12(c) motion for judgment on the pleadings is the standard applicable to a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F. 3d 327, 336 (6th Cir. 2007). "To state a valid claim, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id.* The Court should not "accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Id.* Further, "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Mezibov v. Allen*, 411 F. 3d 712, 716 (6th Cir. 2005). As the Supreme Court recently observed, "when the allegations in a complaint, however true, could not raise a claim of entitlement for relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007) (internal quotations omitted).

### A.     After *Atlantic Research*, a party who has incurred response costs as a result of a government lawsuit filed under CERCLA Sections 106 or 107 may seek contribution <u>only</u> by way of CERCLA Section 113.

This Court and the Sixth Circuit have already agreed that the statute of limitations bars ITT from bringing a Section 113 contribution claim against the Bronson Defendants for the NBIA site. The question, then, is whether ITT is permitted to recast its contribution claim under Section 107 to avoid the Section 113's limitations bar and allocation structure.[4] The analysis begins, as the Sixth Circuit directed, with the Supreme Court's decision in *Atlantic Research*.

---

[4] The Bronson Defendants have filed their own Section 113 counterclaim, cross-claim, and third-party claims to ensure allocation of response costs if ITT is allowed to circumvent the Section 113 limitations bar. That does not change the fact that by pursuing a claim under Section 107, ITT improperly shifts the burden of proving allocation to Defendants.

In *Atlantic Research*, the Supreme Court reaffirmed that Sections 107 and 113 "provide two clearly distinct remedies." 127 S. Ct. at 2337 (citations omitted). "CERCLA provide[s] for a **right of cost recovery** in certain circumstances, § 107(a), and **separate rights to contribution** in other circumstances, §§ 113(f)(1), 113(f)(3)(B))." *Id.* (emphasis in original, citation omitted). "[C]osts incurred **voluntarily** are recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f). *Id.* at 2338 n.6 (emphasis added). The Supreme Court chose not to decide whether compelled costs of response "are recoverable under § 113(f), § 107(a), or both." *Id.*

ITT's Section 107 claim regarding the NBIA site seeks compelled costs of response, and it has two components. First, the Consent Decree obligated ITT to perform work at the site. (Consent Decree ¶ 6(A).) Second, the Consent Decree required ITT to reimburse the government for response costs the government had already incurred at the site. (*Id.* ¶¶ 6(A), 53-54.) To the extent ITT seeks contribution for reimbursement costs, ITT is clearly limited to a Section 113(f) claim, *Atlantic Research*, 127 S. Ct. at 2338 n.6, and is therefore barred by the statute of limitations. For several reasons, the result should be no different for the costs ITT has incurred under the Consent Decree performing work at the site.

> **1.    The plain language of CERCLA Sections 107 and 113 demonstrates that ITT is limited to a claim for contribution under Section 113 for compelled costs of response.**

But for its failure to timely file a claim, ITT, a potentially responsible party ("PRP"), could have asserted a Section 113 claim "during or following any civil action" under Sections 106 or 107. 42 U.S.C. § 9613(f)(1). Indeed, Section 113's scope expressly includes parties like ITT who have resolved their liability to the government:

> A person who has resolved its liability to the United States or a State <u>for some or all of a response action</u> **or** <u>for some or all of the costs of such action</u> in an

> administrative or judicially approved settlement may seek contribution from any person who is not a party to a settlement referred to in paragraph (2).

42 U.S.C. § 9613(f)(3)(B) (emphasis added).  "The simple reading of this subsection is that the initial phrase refers to expenses incurred in the course of a liable party's direction of a site's cleanup [e.g., ITT's claim for response costs] while the second phrase refers to reimbursement of cleanup costs incurred under the government's hegemony [e.g., ITT's payments to the government]."  *United Techs. Corp. v. Browning-Ferris Indus., Inc.*, 33 F.3d 96, 102 (1st Cir. 1994).

By comparison, Section 107 authorizes a "cost recovery" claim only to a party who has "**itself** incurred cleanup costs."  42 U.S.C. § 9607(a) (emphasis added).  A PRP who sustains expenses performing response actions under a consent decree does not incur its own costs within the meaning of the statute, but instead is sustaining such expenses to extinguish common liability owed to the EPA.  Its liability is "similar to that of a tort feasor's liability for the doctor's bills of [an] injured party.  Payment by the tort feasor does not mean it has incurred doctor's bills itself." *United States v. Taylor*, 909 F. Supp. 355, 365 (M.D.N.C. 1995).  Accordingly, when a party like ITT expends funds for cleanup solely due to the imposition of liability under a consent decree, it has not incurred necessary costs of response within the meaning of Section 107(a) and it can only shift its liability under Section 113.

   **2.     The Supreme Court's opinion in *Atlantic Research* strongly suggests that a party who enters into a consent decree with the government may pursue contribution against non-settling parties, but only by filing a claim under Section 113.**

The Supreme Court's decision in *Atlantic Research* arose out of an appeal from the Eighth Circuit.  In its opinion, the Supreme Court quoted favorably the Eighth Circuit's view that to harmonize Sections 107 and 113 and to prevent the latter from becoming "meaningless," *Atlantic Research Corp. v. United States*, 459 F.3d 827, 836 (8th Cir. 2006), a person who has a

Section 113 contribution claim must use Section 113 and cannot choose to sue under Section 107 instead:

> To prevent a perceived conflict between § 107(a)(4)(B) and § 113(f)(1), the [Eighth Circuit] reasons that PRPs that 'have been subject to §§ 106 or 107 enforcement actions are still required to use § 113, thereby ensuring its continued vitality.' We granted certiorari, **and now affirm**.

127 S. Ct. at 2335 (emphasis added, citations omitted). The Supreme Court's selection of this passage immediately before stating its affirmance indicates that the Court, if addressing the question directly, would likely require PRPs that have an action for contribution under Section 113(f) to use it and not Section 107.

In its opinion remanding the present case, the Sixth Circuit similarly observed that, under *Atlantic Research*, "the appropriateness of a § 107(a) cost recovery or § 113(f) contribution action varies depending on the circumstances leading up to the action, not the identity of the parties." *ITT Indus.,* 506 F.3d at 458, citing *Atlantic Research*, 127 S. Ct. at 2338. "To maintain the vitality of § 113(f) . . . , PRPs who have been subject to a civil action pursuant to §§ 106 or 107 or who have entered into a judicially or administratively approved settlement must seek contribution under § 113(f)." *Id.*, citing 127 S. Ct. at 2338. ITT **is** a PRP who has been subject to a civil action pursuant to §§ 106 and 107, and it **has** entered into a judicially approved settlement. (Ex. G, Consent Decree at 1 (noting the EPA "filed a complaint [against ITT] pursuant to Sections 106 and 107" of CERCLA), and at 2, 80 (noting that ITT is entering into the Consent Decree and will not oppose entry by this Court). Accordingly, under the Sixth Circuit's reading of *Atlantic Research*, ITT "must seek contribution under § 113(f), or not at all."

    **3.**    **Allowing ITT to choose to bring its Section 113 claim under Section 107 would nullify Section 113's limitations period and allocation structure.**

The Supreme Court in *Atlantic Research* acknowledged that giving PRPs a choice between Sections 107 and 113 "effectively allows PRPs to circumvent § 113(f)'s shorter statute of limitations." 127 S. Ct. at 2337, citing 42 U.S.C. §§ 9613(g)(2)-(3). The Court also fretted that giving PRPs such a choice would allow PRPs to "eschew equitable apportionment under § 113(f) in favor of joint and several liability under § 107(a)." *Id.* Ultimately, however, the Court was assuaged by the fact that neither of these problems is a concern for voluntary PRPs like Atlantic Research. A voluntary PRP, having never been subject to an action under Section 106 or 107, is not even eligible to bring a Section 113 claim. 42 U.S.C. § 9613(f). And a defendant being sued by a voluntary PRP under Section 107 suit can "blunt any inequitable distribution of costs by filing a § 113(f) counterclaim." 127 S. Ct. at 2339. Such a counterclaim "would necessitate the equitable apportionment of costs among the liable parties, including the PRP that filed the § 107(a) action." *Id.*, citing 42 U.S.C. § 9613(f)(a).

In stark contrast, circumvention of the Section 113 statute of limitations and allocation structure are of major concern in the situation presented here, where ITT is seeking reimbursement after having been sued under Sections 106 and 107. (Ex. G, Consent Decree at 1.) Indeed, ITT's attempt to plead its Section 113 claim under Section 107 is a gambit ITT makes precisely because its Section 113 contribution claim is barred by the applicable statute of limitations. And because ITT entered into a Consent Decree to resolve the Section 107 claim the EPA filed against it, ITT could argue that it is immune from Section 113 counterclaims altogether. (Ex. G, Consent Decree ¶ 89) ("the Settling Defendants are entitled, as of the effective date of this Consent Decree, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this

Consent Decree.").)  Although ITT agreed to waive this immunity bar in its oral argument before

the Sixth Circuit, such waiver will rarely be the case.  As a result, allowing a party who incurred

costs of response under a Consent Decree to pursue cost recovery under Section 107 rather than

Section 113 will allow that party to shift 100 percent of the costs, jointly and severally, to any

individual defendant, without regard to fault, and without application of Section 113's equitable

allocation principles.  That result cannot be what Congress intended, as reflected by the plain

language of Sections 107 and 113.

> ### 4.    CERCLA's statutory framework and legislative history
> ### support the result that ITT is limited to its Section 113 claim.

A ruling limiting ITT to a Section 113 claim is also necessary to give meaning to other

CERCLA provisions, such as the *de minimis* settlement provision of Section 122(g).  Section

122(g) protects a *de minimis* party who settles with the United States from any contribution

actions by a PRP.  Allowing a PRP like ITT to bring a Section 107 claim would eviscerate

Section 122(g) and frustrate the Congressional intent of relieving *de minimis* parties from

"prolonged and costly litigation."  131 Cong. Rec., H11086 (Dec. 5, 1985) (statement of Rep.

Glickman).

The legislative history of the Superfund Amendments and Reauthorization Act of 1986

("SARA"), which created Section 113, likewise demonstrates that Congress intended Section

113(f) to govern all CERCLA claims for contribution, including claims by parties that perform

work, like ITT.  The House Report notes that Section 113 applies when a "person believes that it

has assumed **a share of the cleanup** or cost that may be greater than its equitable share under the

circumstances."  H.R. Rep. No. 99-253(I), at 79; 1986 U.S.C.C.A.N. at 2861.  After reviewing

this statement and other relevant legislative history, the First Circuit concluded:

> These statements show beyond serious question that the drafters intended
> contribution, as that term is used in [Section 113], to cover parties'

disproportionate payments of first-instance costs [i.e., costs for performing the work] as well as parties' disproportionate payments of reimbursed costs.

*United Techs. Corp.*, 33 F.3d at 102.

>    **5.    There is no language in *Atlantic Research* that upsets the uniform conclusion of the federal circuits that a party subject to CERCLA liability is limited to seeking contribution in accord with Section 113(f).**

In *Atlantic Research*, the Court clarified that not all claims filed by PRPs must be for contribution, and, more specifically, that a voluntary PRP in Atlantic Research's position does have a cost recovery action under Section 107, not a contribution claim under Section 113. *Atlantic Research* therefore overrules the various circuit decisions which held that a PRP could never assert a Section 107 claim.

But *Atlantic Research* did not overrule the numerous circuit decisions holding that claims for costs incurred in performing a cleanup pursuant to a judicial or administrative settlement are limited to a contribution action under Section 113(f). *See, e.g., United Techs. Corp.*, 33 F.3d at 103; *Bedford Affiliates v. Sills*, 156 F.3d 416, 423-25 (2d Cir. 1998); *New Castle County v. Halliburton NUS Corp.*, 11 F.3d 1116, 1121-23 (3d Cir. 1997); *Akzo Coatings, Inc. v. Aignor Corp.*, 30 F.3d 761, 764 (7th Cir. 1994); *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 935 (8th Cir. 1995); *United States v. Colo. & E.R.R. Co.*, 50 F.3d 1530, 1534-36 (10th Cir. 1995).[5] Parties like ITT, who have a cause of action for contribution, are not permitted to recast their claim under Section 107 to obtain a better deal than Congress intended to give them. They are "still required to use § 113, thereby ensuring its continued vitality. . . . This resolution gives life to each of CERCLA's sections, and is consistent with CERCLA's goal of encouraging prompt

---

[5] Although the precise rationale in some of these cases must be reexamined after *Atlantic Research*, the core concern—that parties pursuing a contribution claim must bring it under Section 113—remains the same.

and voluntary cleanup of a contaminated site." *Atlantic Research Corp. v. United States*, 459 F.3d 827, 836-37 (8th Cir. 2006).

> **6.**    **The only post-*Atlantic Research* and post-*ITT* decision addressing this issue held that a party in ITT's position was limited to pursuing a Section 113 contribution claim.**

To date, there appears to be only one case that addresses this issue while considering both the Supreme Court's decision in *Atlantic Research* and the Sixth Circuit's decision here. In *New York v. Next Millennium Realty, LLC*, 2008 WL 1958002 (E.D.N.Y. May 2, 2008), New York State sued to recover costs under CERCLA Section 107. The Spiegel defendants filed cross-claims, also under Section 107. The cross-defendants moved to dismiss, asserting that the Spiegel defendants were limited to pursuing a contribution claim under Section 113. The court emphatically agreed:

> [T]here is no evidence that the Spiegel Defendants are seeking to recover necessary response costs that they themselves have voluntarily incurred. To the contrary, the Spiegel Defendants' claim pursuant to § 107 of CERCLA is based on remediation costs that the Spiegel Defendants and others have incurred and may incur in the future **as the result of the lawsuit instituted under § 107(a) by the Plaintiffs to recover the State's costs for cleaning up the NICA Site.**
>
> **Inasmuch as the Spiegel Defendants have not demonstrated that they incurred necessary costs of response within the meaning of § 107(a), the Spiegel Defendants have failed to state a claim for cost recovery upon which relief can be granted**.

*Id.* at *6-7 (emphasis added) (citing, among other things, the Supreme Court's decision in *Atlantic Research* and *ITT Indus.,* 506 F.3d at 458).

In sum, there is no set of circumstances that should permit ITT to circumvent Section 113's statute of limitations and allocation structure by filing its claim under Section 107. Indeed, the statutory structure, the legislative history, previous cases, the most recent case, and the reasoning of *Atlantic Research* itself all counsel strongly in favor of a construction that compels parties with a contribution claim to file that claim under the contribution statute, Section 113.

Because ITT has no cause of action under Section 107, its Section 107 claim regarding the NBIA

site must be dismissed.

> **B.    ITT's Section 107 claim for the NBIA site is also barred under the Sixth Circuit's holding in *Centerior*, a case which the Supreme Court in *Atlantic Research* did not abrogate in fact or by implication.**

Nothing in the *Atlantic Research* opinion impugns the core holding of *Centerior Service

Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344 (6th Cir. 1998), the case on which this

Court relied in initially dismissing ITT's Section 107 claims.  In *Centerior*, the plaintiffs

similarly incurred cleanup costs after the EPA filed a Section 106 action against them.  *Id.* at

346.  The plaintiffs then filed a joint and several cost recovery action against multiple

defendants, including the United States, under Section 107.  *Id.* at 346-47.  Defendants moved

for summary judgment, raising the question of whether plaintiffs were limited to filing a Section

113(f) contribution claim.  *Id.* at 347.

The government argued that an action for contribution can be **brought** pursuant

to Section 107(a), but is in effect still **governed** by Section 113(f).  "Under such a reading, if

§ 113(f) is incorporated under § 107, then a § 113(f) action **is** an action to recover the necessary

costs of response by any other person, as referred to in § 107.  The action only happens to be an

action for contribution."  *Id.* at 350.  The Sixth Circuit agreed.  *Id.*  In so holding, the *Centerior*

court chose not to follow numerous circuits that had held that PRPs are precluded altogether

from bringing Section 107 claims.  *Id.* at 349.  Instead, the court followed the Ninth and Tenth

Circuits, reasoning that "[a]ny party may seek response costs [under Section 107] regardless of

its status as a liable or potentially liable party.  Whether that party may seek joint and several

cost recovery, or is limited to an action for contribution governed by § 113(f), however, depends

on the nature of the cause of action pleaded."  *Id.* at 350.  The *Centerior* court concluded that the

plaintiffs' claim was a "quintessential" action for contribution, because plaintiffs were PRPs who

had incurred cleanup costs in response to a Section 106 order.  *Id.* at 351.  The court expressly

left open the question "of whether volunteers . . . may seek joint and several cost recovery."  *Id.*

at 354.

The *Centerior* holding is fully consistent with the reasoning in *Atlantic Research*, which

answered the question left open by *Centerior*, i.e., the type of CERCLA claim available to a

voluntary plaintiff.  As noted above, the Supreme Court in *Atlantic Research* reversed those

circuits that had held a PRP could never bring a Section 107 claim; however, the Court did not

impugn the circuits following the *Centerior* approach.  Instead, the Court left open the very

question that *Centerior* resolved.  *See* 127 S. Ct. at 2338 n.6 ("We do not decide whether these

compelled costs of response are recoverable under § 113(f), § 107(a), or both.").  Because there

is no conflict, *Centerior* still controls.

In its opinion, the Sixth Circuit noted that *Atlantic Research* appeared to "bolster" ITT's

claim that its Section 107(a) claim is no longer barred by *Centerior*.  But, reflecting the fact that

neither party had an opportunity to fully brief *Atlantic Research*'s effect, the panel remanded for

this Court to determine, in the first instance, how ITT's claim should be resolved "in light of

*Atlantic Research*."  *ITT Indus.,* 506 F.3d at 458.  Because a thorough analysis demonstrates that

there is no conflict between *Atlantic Research* and *Centerior*, *Centerior* still controls and

provides an alternative ground for dismissing ITT's Section 107 claim.

**III.    ITT's remaining state law counts should also be dismissed, either without
prejudice under 28 U.S.C. § 1367, or with prejudice because they fail to state
claims under state law.**

For the exact same reasons the Bronson Defendants articulated in their initial motion to

dismiss, ITT's state law claims (Counts II and III) should be dismissed now.  (R.22 Br. in Supp.

of BorgWarner Defs.' Mot. to Dismiss.)  ITT's state law claims fail on the merits for numerous

reasons (*id.* at 15-21), and in any event cannot be litigated under the auspices of this Court's supplemental jurisdiction once the federal claims are appropriately rejected.  (*Id.* at 15.)

## CONCLUSION

ITT's Section 107 claim against the Bronson Defendants necessarily fails as a matter of law.  A Section 107 claim requires proof that a defendant's release caused a plaintiff to incur response costs.  But ITT, the EPA, and the MDEQ all agree that no release connected to the Bronson Defendants caused ITT to incur response costs at the NBFF OU1 site.  Accordingly, ITT's Section 107 claim in connection with that site is barred.

As for the NBIA site, it is undisputed that ITT is seeking to recover costs incurred as a result of a Consent Decree entered in settlement of Section 106 and 107 claims that the government filed against ITT.  This is a quintessential contribution claim, one that must be brought under Section 113 applying the logic of the statutory language, *Atlantic Research*, and many other cases.  Accordingly, ITT's Section 107 claim in connection with the NBIA site also must be dismissed.

Accordingly, the Bronson Defendants respectfully request that their motion for summary judgment and to dismiss be granted.


Dated:  July 16, 2008                                   /s/ John J. Bursch
                                                       John J. Bursch
                                                       WARNER NORCROSS & JUDD LLP
                                                       111 Lyon Street, N.W., Suite 900
                                                       Grand Rapids, Michigan 49503-2487
                                                       Phone:  616.752.2000
                                                       jbursch@wnj.com
                                                       Attorneys for the Bronson Defendants

1557149