UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ITT INDUSTRIES, INC.,

       Plaintiff,

v.

BORGWARNER, INC., et al.,

       Defendants.
_____/

File No.  1:05-CV-674

HON. ROBERT HOLMES BELL

**O P I N I O N**

This action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, for cost recovery at two superfund sites regulated by the Environmental Protection Agency ("EPA") is before the Court on the Bronson Defendants'[1] motion for partial summary judgment and partial dismissal.  For the reasons stated herein, the Bronson Defendants' motion for summary judgment will be denied and their motion to dismiss will be granted.

I.

Plaintiff ITT Industries, Inc. ("ITT") filed this action for damages against Defendants after Plaintiff incurred substantial expenses in investigating and addressing hazardous conditions on two sites regulated by the EPA, the Operable Unit One ("OU1") of the North

---

[1] The Bronson Defendants are BorgWarner, Inc., Kuhlman Corporation, and Bronson Specialties, Inc.

Bronson Industrial Area Superfund Site ("NBIA Site"), and OU1 of the North Bronson Former Facilities Site ("NBFF Site"). Plaintiff alleged a cost recovery claim under CERCLA § 107, a contribution claim under CERCLA § 113, and various state law claims.

In a prior opinion and judgment this Court granted Defendants' motions to dismiss Plaintiffs' CERCLA cost recovery claim and contribution claim, and dismissed the supplemental state law claims. (Dkt. Nos. 61, 62, 08/23/2006 Op. & J.) The Sixth Circuit affirmed the order dismissing the contribution claim (Count II), but reversed the order dismissing the cost recovery claim (Count I) and remanded for further proceedings in light of the Supreme Court's decision in *United States v. Atl. Research Corp.*, 551 U.S. 128, 127 S. Ct. 2331, 2336 (2007), which held that potentially responsible parties ("PRPs") are not precluded from seeking cost recovery under § 107(a). *ITT Indus., Inc. v. BorgWarner, Inc.*, 506 F.3d 452, 458 (6th Cir. 2007). The Sixth Circuit expressed no opinion on how the cost recovery claim should be resolved. *Id.*

After the action was remanded, ITT filed an amended complaint alleging claims for cost recovery under CERCLA § 107 for both the NBIA Site as well as the NBFF Site, and state law claims under the Natural Resources and Environmental Protection Act ("NREPA"), Mich. Comp. Laws. § 324.20126. (Dkt. No. 88.)

The Bronson Defendants have filed a motion seeking summary judgment on the cost recovery claim as to the NBFF Site and dismissal of the cost recovery claim as to the NBIA Site. (Dkt. No. 122.)

2

**II.**

The Bronson Defendants[2] contend that they are entitled to summary judgment with respect to the NBFF Site because there is no evidence to suggest that Defendants were responsible for the contamination at this site that caused ITT to incur response costs.

The underlying facts regarding the NBFF Site are set forth in this Court's previous opinion and in the Sixth Circuit's opinion. The relevant material facts are not in dispute. By way of summary, ITT is the corporate successor to a previous owner and operator at the NBFF Site. The Bronson Defendants are also previous and current owners and operators at the NBFF Site.

In 1998 the MDEQ detected significant concentrations of the solvent trichloroethylene ("TCE") in groundwater samples north and northwest of the former Bronson Reel Company site. (Dkt. No. 123, Bronson Defs.' Br., Ex. E, MDEQ Rpt. 2.) In September 2002, ITT entered into an Administrative Order by Consent ("AOC") with the EPA. The AOC required ITT to conduct a Streamlined Remedial Investigation and Focused Feasibility Study ("RI/FS"), the scope of which was set forth in a Statement of Work ("SOW"). (Bronson Defs.' Br., Ex. A, AOC at 1.) The stated purpose of the AOC was:

---

[2]Defendant Royal Oak Industries, Inc. has filed a concurrence in the Bronson Defendants' motion for summary judgment. (Dkt. No. 139.)

3

>   (a) to determine the nature and extent of TCE contamination in groundwater caused by the release or threatened release, if any, of TCE from [the NBFF Site] OU1 (excluding the industrial sewer) by conducting a remedial investigation; (b) to determine and evaluate alternatives for remedial action (if any) to prevent, mitigate or otherwise respond to or remedy identified risks from [the NBFF Site] OU1 related contamination other than that determined to be caused by the industrial sewer or other off-site sources; and (c) to provide for the recovery of response and oversight costs incurred by U.S. EPA with respect to this Consent Order.

(AOC at 3.)

At the conclusion of ITT's investigation, ITT's experts, the MDEQ, and the EPA were in unanimous agreement that the TCE found in the regional groundwater did not come from any site owned or operated by the Bronson Defendants, but from the nearby LA Darling and Scott Fetzer sites. (Bronson Defs.' Br., Ex. B, SRI/SRA 5-3 to 5-7; MDEQ Rpt. 2; Bronson Defs.' Br., Ex. D, EPA Notice 2.)

A *prima facie* case for cost recovery under § 107(a) consists of the following four elements:

>   (1) the property is a "facility"; (2) there has been a "release" or "threatened release" of a hazardous substance; (3) the release has caused the plaintiff to incur "necessary costs of response" that are "consistent" with the NCP [National Contingency Plan]; and (4) the defendant is in one of four categories of potentially responsible parties.

*Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2006) (citing *Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 541 (6th Cir. 2001)).

The Bronson Defendants do not dispute that the NBFF Site is a facility, that there was a release of hazardous substance, or that they are potentially responsible parties ("PRPs"). Instead, for purposes of their motion for summary judgment, the Bronson Defendants focus on the third element, the requirement that the plaintiff show that the release has caused the plaintiff to incur "necessary costs of response." The Bronson Defendants contend that they are entitled to summary judgment because Plaintiff cannot show that the Bronson Defendants are responsible for releasing the TCE that caused ITT to incur response costs. (Bronson Defs.' Br. 6.)

There is no dispute that TCE contamination in regional groundwater was the impetus for the AOC. There is also no real dispute that the NBFF Site is not the source of the TCE in the regional groundwater. ITT nevertheless contends that the Bronson Defendants' motion for summary judgment must be denied because its causation argument is flawed. The Court agrees.

There is no requirement that ITT prove that the Bronson Defendants caused any release. The Sixth Circuit specifically rejected such a burden in *Kalamazoo River Study Group v. Menasha Corp.*, 228 F.3d 648, 653 (6th Cir. 2000):

> It is clear from the text, structure, and legislative history of § 107 that the provision does not require a plaintiff to show that a particular defendant caused either the release or the incurrence of response costs in order to prove liability.

*Id.* at 655.

5

In response, the Bronson Defendants shift their argument from the lack of evidence that they were themselves a source of the release, to the lack of evidence that there was a release at the NBFF Site of the TCE that was the impetus for the AOC. They assert that § 107(a) limits owner liability to "sites 'from which there is a release, or a threatened release which causes the incurrence of response costs.'" 42 U.S. C. § 9607(a).   (Dkt. No. 146, Bronson Defs.' Reply Br. 6.) They contend that no amount of factual development can show that a release or threatened release "at the NBFF Site" caused ITT to incur response costs at NBFF.

The Bronson Defendants have inserted the term "sites" in their paraphrasing of the requirements of § 107(a). They have not pointed to any statutory language or any language from the relevant case law to support their assertion that ITT is required to show that there was a release "at the NBFF Site."

Moreover, the Bronson Defendants have not identified any basis for limiting the scope of a § 107(a) recovery action to releases that were the "impetus" for the response costs. In this case the AOC indicates that the work should "focus" on whether the NBFF Site was a source of TCE, but it also required ITT to conduct a risk assessment of all NBFF Site-related contaminants. (AOC 2-3.) In order to accomplish its tasks under the AOC, ITT sampled soil and groundwater for all relevant hazardous substances, including volatile organic compounds ("VOCs") and metals. (SRI/SRA §§ 4.2, 5.0; Dkt. No. 148, Pl.'s Resp. Br., Ex. D, Record

6

of Decision ("ROD") § 6.4.) ITT's investigation revealed the presence of VOCs in the soil and groundwater that originated on the NBFF Site. (ROD § 6.4.)

For purposes of establishing the Bronson Defendants' liability under a § 107(a) cost recovery claim it does not matter whether: (1) the release causing response costs was caused by Defendants specifically or some other party; (2) the release causing response costs originated from on-site or off-site; or (3) the release was the "impetus" for the AOC. ITT has presented evidence of a release of a hazardous substance that caused ITT to incur necessary response costs. This is sufficient to meet the causation element of ITT's § 107(a) claim. The Bronson Defendants' motion for summary judgment with respect to the NBFF Site will accordingly be denied. In light of this ruling, the Court declines to rule on Defendant/Third-Party Plaintiff Scott Fetzer's alternative argument that the Bronson Defendants' motion for summary judgment should be denied as premature. (Dkt. No. 140.)[3]

**III.**

---

[3]Defendant Fetzer contends that the EPA has left open the question of whether past operations at the NBFF Site contributed to groundwater contamination:

> Based on the data presented, the U.S. EPA feels that there are no unacceptable risks associated with the sampled area of the property and no indication of on-going releases to groundwater. No determination has been made regarding possible past contaminant contributions to groundwater, either directly from historic soil contamination or indirectly via the industrial sewer.

(Dkt. No. 140, Fetzer Mem. in Opp'n, Ex. A).

The Bronson Defendants have also moved for dismissal of ITT's § 107 claim for cost recovery involving the NBIA Site on the basis that ITT cannot bring an untimely § 113 contribution claim under the guise of a § 107 cost recovery claim. The government has filed an amicus brief in support of Defendants' motion for dismissal.

The NBIA Site involves an industrial sewer, a county drain, and several lagoons, developed by the City of Bronson to handle industrial wastes. In 1999, ITT and others entered into a federal Consent Decree with the EPA. (08/23/06 Op. 3.) ITT has incurred, and will continue to incur, extensive work-related response costs in furtherance of its obligations under the 1999 NBIA Site Consent Decree, and it seeks to recover some of those costs from non-signatories to the Consent Decree. (Dkt. No. 88, Am. Comp. ¶¶ 54-55.)

This Court previously dismissed Plaintiff's § 107(a) cost recovery claims because the Sixth Circuit's holding in *Centerior Service Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344 (6th Cir. 1998), barred Plaintiff, as a PRP, from bringing a cost recovery claim pursuant to § 107(a). (08/23/06 Op. 10.) The Sixth Circuit remanded the § 107 claims for further consideration in light of *Atlantic Research*. The Sixth Circuit noted that *Atlantic Research* bolstered Plaintiff's assertion that it has a viable cost recovery claim under § 107(a), but expressed "no opinion as to how Plaintiff's cost recovery action ultimately should be resolved." *ITT*, 506 F.3d at 458.

Prior to *Atlantic Research* the Sixth Circuit had taken the position that PRPs were not entitled to bring a cost recovery action under § 107(a). *Centerior*, 153 F.3d at 350 ("Claims

by PRPs, however, seeking costs from other PRPs are necessarily actions for contribution, and are therefore governed by the mechanisms set forth in § 113(f)."). In *Atlantic Research* the Supreme Court held that PRPs are not precluded from bringing a cost recovery action under § 107(a). *Id.* at 2336. ("[T]he plain language [of § 107(a)(4)(B)] authorizes cost-recovery actions by any private party, including PRPs.").

The Supreme Court reiterated in *Atlantic Research* that "§§ 107(a) and 113(f) provide two 'clearly distinct' remedies." *Id.* at 2337. "[T]he remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action 'to persons in different procedural circumstances.'" *Id.* (quoting *Consol. Edison Co. of NY, Inc. v. UGI Utils., Inc.*, 423 F.3d 90, 99 (2d Cir. 2005)).

> Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence, a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue § 113(f) contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under § 113(f)(1), the PRP cannot simultaneously seek to recover the same expenses under § 107(a). Thus, at least in the case of reimbursement, the PRP cannot choose the 6-year statute of limitations for cost-recovery actions over the shorter limitations period for § 113(f) contribution claims.

*Id.* at 2338. *"*To maintain the vitality of § 113(f), however, PRPs who have been subject to a civil action pursuant to §§ 106 or 107 or who have entered into a judicially or administratively approved settlement must seek contribution under § 113(f)." *ITT*, 506 F.3d

9

at 458 (citing *Atlantic Research*, 127 S. Ct. at 2338, but noting that the Supreme Court had acknowledged a possible overlap).

The plaintiff in *Atlantic Research* was a PRP who had not been subject to an action under § 106 or § 107, and who had not entered into a judicially or administratively approved settlement. The plaintiff had incurred costs voluntarily and accordingly was unable to bring a contribution action under § 113(f). The Supreme Court stated that, for the purposes of the case before it, "it suffices to demonstrate that costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f). *Id.* The Court noted, however, that it was not suggesting that §§ 107(a)(4)(B) and 113(f) do not have any overlap at all. *Id.* at 2338 n.6. The Court noted that a PRP may sustain expenses pursuant to a consent decree following a suit under § 106 or § 107(a): "In such a case, the PRP does not incur costs voluntarily but does not reimburse the costs of another party." The Court did not decide whether these compelled costs of response are recoverable under § 113(f), § 107(a), or both." *Id.*

The Bronson Defendants' motion to dismiss is requires the Court to address the question that was explicitly left unanswered by the Supreme Court in *Atlantic Research*: whether a PRP who was required to incur costs pursuant to a consent decree may bring a § 107(a) cost recovery action.

10

The Consent Decree obligated ITT to perform work at the site and to reimburse the government for response costs the government had already incurred at the site.  As noted in *Atlantic Research*, "§ 107(a) permits a PRP to recover only the costs it has 'incurred' in cleaning up a site." *Id.*  (quoting 42 U.S.C. § 9607(a)(4)(B)). "When a party pays to satisfy a settlement agreement or a court judgment, it does not incur its own costs of response. Rather, it reimburses other parties for costs that those parties incurred." *Id.*  Accordingly, to the extent ITT seeks contribution for reimbursement costs, it is clearly limited to a § 113(f) claim, and this § 113(f) claim is barred by the statute of limitations. *ITT*, 506 F.3d at 459 n.3 ("We note that Plaintiff did, in fact, concede before the district court that its § 113 contribution claim with respect to the NBIA Site is time-barred.").

Accordingly, the issue in this motion is whether ITT, who engaged in work at the site pursuant to a consent decree, can recover its response costs pursuant to § 107(a).

The Bronson Defendants and the United States contend that because Plaintiff ITT entered into a consent decree with respect to the NBIA Site, and because ITT could have brought a § 113(f) contribution claim, but failed to do so in a timely manner, ITT should not be able to evade the statute of limitations and the allocation scheme of a § 113(f) contribution claim by bringing a contribution claim under the guise of a § 107(a) cost recovery action. This Court agrees.

Prior to *Atlantic Research* the law in the Sixth Circuit and in most other circuits was that a claim for costs incurred in performing a cleanup pursuant to a judicial or administrative

settlement is limited to a contribution action under § 113(f).  *See Centerior Serv.*, 153 F.3d at 351 (holding that an action by plaintiffs who had a legal obligation to conduct cleanup pursuant to a § 106 order and then sought costs for cleanup from other PRPs, was the "quintessential" action for contribution).  *See also Consol. Edison*, 423 F.3d at 101 ("When a party expends funds for cleanup solely due to the imposition of liability under an administrative or court order or final judgment, it has not in fact, incurred, necessary costs of response within the meaning of section 107(a)"); *United Techs. Corp. v. Browning-Ferris Indus.*, 33 F.3d 96, 102 (1st Cir. 1994) (holding that the term "contribution" as used in § 113 covers parties' disproportionate payments of first-instance costs as well as parties' disproportionate payments of reimbursed costs.); *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir. 1994) (holding that the plaintiff's suit for work-related costs incurred pursuant to a consent decree was a contribution action under § 113(f)).  Although *Atlantic Research* overruled decisions holding that a PRP could never assert a § 107 claim, *Atlantic Research* did not overrule decisions holding that claims for costs incurred in performing a cleanup pursuant to a judicial or administrative settlement are limited to a contribution action under § 113(f).

All of the post-*Atlantic Research* decisions that have directly addressed the issue are consistent in holding that *Atlantic Research* did not overrule decisions holding that claims for costs incurred in performing a cleanup pursuant to a judicial or administrative settlement are limited to a contribution action under § 113(f).  *See Appleton Papers Inc. v. George A.*

*Whiting Paper Co.*, 572 F. Supp.2d 1034, 1041-44 (E.D.Wis. 2008) (holding that clean-up costs incurred pursuant to a consent decree were not incurred voluntarily and must be sought through a § 113(f) contribution action); *Niagara Mohawk Power Corp. v. Consol. Rail Corp.*, 565 F. Supp.2d 399, 402 (N.D.N.Y. 2008) (holding that nothing in *Atlantic Research* provides authority to change the circuit's previous decisions holding that a party that has incurred expenditures under a consent order with a government agency and has been found partially liable under § 113(f)(1) may not seek to recoup those expenditures under section 107(a)); *New York v. Next Millenium Realty, LLC*, No. CV-03-5985, 2008 WL 1958002, at *6 (E.D.N.Y. May 2, 2008) (holding that where the defendants' § 107 claim was based on remediation costs they incurred and may incur in the future as the result of a lawsuit instituted under § 107(a), they did not demonstrate that they incurred necessary costs of response within the meaning of § 107(a)).

*Atlantic Research* held that "the remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action 'to persons in different procedural circumstances.'" 127 S.Ct. at 2338 (quoting *Consol. Edison*, 423 F.3d at 99). Consistent with the language of the statute and the case law, the relevant procedural circumstances are whether the plaintiff has been subject to an enforcement action under § 106 or § 107. If it has, then the plaintiff is limited to a § 113(f) contribution claim. If it has not, then the plaintiff can bring a § 107 claim.

13

ITT contends that this interpretation runs afoul of the plain language of the statute. In *Atlantic Research* the Supreme Court held that "the plain language of subparagraph (B) authorizes cost-recovery actions by any private party, including PRPs." 127 S. Ct. at 2336. ITT contends that because the term "voluntary" is not found in § 107(a), under the plain language approach utilized by the Supreme Court in *Atlantic Research*, § 107(a) should be broadly construed to permit a § 107 cost recovery action by "any person" that incurs necessary costs of response, regardless of whether it is a voluntary PRP, and regardless of whether it conducted those response activities pursuant to negotiated agreements with the government under a consent decree or an AOC. (ITT Resp. in Opp'n 17.)

When construing a statute, "courts are to give effect to the intention of the legislature adopting the statute or provision in question." *Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762, 769 (6th Cir. 2005). "Courts are to make every effort to interpret provisions so that other provisions in the statute are not rendered inconsistent, superfluous, or meaningless." *Id.* Although Plaintiff's plain language interpretation of § 107(a) makes sense when § 107(a) is considered in isolation, it does not make sense when considered in against the backdrop of the statutory structure, and the legislative history that has been discussed in the CERCLA cases that preceded *Atlantic Research*. The only construction that does justice to the statutory structure and legislative history as discussed in *Centerior Service*, and that is also consistent with *Atlantic Research*, is one that provides that where a party has been the subject of a CERCLA enforcement action and can assert a claim under § 113(f), that

14

party cannot also assert a claim under § 107(a). *See Appleton Papers*, 572 F. Supp.2d at 1043; *Niagara*, 565 F. Supp.2d at 402.

Contrary to ITT's assertions, the Second Circuit's recent opinion in *W.R. Grace & Co. v. Zotos International, Inc.*, No. 05-2798-cv, --- F.3d ---, 2009 WL 564048 (2d Cir. Mar. 4, 2009), does not support ITT's position or change this Court's analysis. In *W.R. Grace* the court found that the plaintiff was a PRP who had voluntarily entered into an administrative consent order prior to remediation, and that therefore, under *Atlantic Research*, it could assert a claim under § 107(a). *Id.* at *6-7. The Second Circuit expressly declined to address the issue of whether "a party who sustains expenses pursuant to a consent decree following a suit under section 106 or section 107(a) may have a cause of action under either section 113(f), section 107(a), or both," because the plaintiff in that case, unlike ITT, was a voluntary PRP. *Id.* at *7 n.7. For the reasons stated herein, the Bronson Defendants' motion for summary judgment on the § 107(a) claim with respect to the NBFF site will be denied, and their motion to dismiss the § 107(a) claim with respect to the NBIA Site will be granted.

An order consistent with this opinion will be entered.


Dated: March 31, 2009                     /s/ Robert Holmes Bell
                                          ROBERT HOLMES BELL
                                          UNITED STATES DISTRICT JUDGE

15