UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ITT CORPORATION, an Indiana corporation,

    Plaintiff,

v.

BORGWARNER INC., a Delaware corporation, et al.,

    Defendants.
                                       /

File No. 1:05-CV-674

HON. ROBERT HOLMES BELL

## O P I N I O N

Defendant Royal Oak Industries ("ROI"), d/b/a Bronson Precision Products, moves for summary judgment on Plaintiff's CERCLA claim relating to the North Bronson Former Facilities Operable Unit One Site ("NBFF OU1 Site"), and for dismissal of Plaintiff's state law claims for lack of supplemental jurisdiction. (Dkt. No. 235.)

**I.**

ROI operated at the NBFF OU1 Site under the assumed name Bronson Precision Products ("BPP") from 1985 to 1994. There is no dispute that during this time ROI machined small metal parts and released cutting oils with metal shavings into the soil. ROI contends that its release of cutting oils does not create CERCLA liability because cutting oil is not a hazardous substance under CERCLA's petroleum exclusion. Furthermore, ROI contends that the metal shavings were not a hazardous substance.

"Hazardous substance," as that term is defined in CERCLA, "does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance . . . ." 42 U.S.C. § 9601(14). "This petroleum exclusion applies to both used and unused petroleum products and includes hazardous substances inherent in unused petroleum products or added to unused petroleum products in the refining process; it does not apply to hazardous substances which are added to petroleum products during use." *Organic Chem. Site PRP Group v. Total Petroleum, Inc.*, 58 F. Supp. 2d 755, 763 (W.D. Mich. 1999) (Enslen, C.J.). *See also S. Pac. Transp. Co. v. Cal. (Caltrans)*, 790 F. Supp. 983, 986 (C.D. Cal. 1991) ("[U]sed petroleum products are covered by the petroleum exclusion, provided that CERCLA-listed hazardous substances have not been added to the petroleum product during its use.").

ROI notes that the union of one non-hazardous substance with another non-hazardous substance can yield only a non-hazardous substance of no concern to CERCLA. *S'ern Pac. Transp.*, 790 F. Supp. at 986 (petroleum mixed with soil is still subject to the petroleum exclusion). ROI contends that its metal shavings were not hazardous materials, and that therefore the mixture of oil and metal shavings was also non-hazardous.

There is at least a question of fact as to whether the alloy steel used by ROI contained chromium or lead. (Dkt. No. 258, Pl.'s Resp. Ex. 9, Gerchow Dep. 35- 39; Pl.'s Resp. Ex. 2, Stephens Report, Table 10.) Both chromium and lead are designated as hazardous substances on Table 302.4, the CERCLA list of hazardous substances. *See* 40 C.F.R. § 302.4(a).

2

ROI nevertheless contends that the phrase "chromium and compounds" as used in the list of hazardous substances is ambiguous, and that Plaintiff must accordingly proceed under 40 C.F.R. § 302.4(b), which addresses "unlisted hazardous substances." An unlisted hazardous substance requires proof that the substance exhibits hazardous characteristics such as ignitability, corrosivity, reactivity and EP toxicity. *See* 40 C.F.R. § 261.20-.24. ROI contends that because Plaintiff has no proof that its metal shavings exhibit these hazardous characteristics, Plaintiff cannot show that the metal shavings were hazardous. ROI also contends that its waste cannot be considered hazardous because the metal shavings were too large, the hazardous substances were not in solution, and there was not a sufficient quantity of the hazardous substances.

The case law does not support ROI's arguments. In *City of New York* the defendant generated waste oil mixed with metal compounds that contained hazardous elements of lead, chromium, and cadmium. 766. F. Supp. at 180. The court rejected the defendant's argument that the listing for "chromium and compounds" was overly broad and that it could not be read to include all compounds containing chromium:

> EPA expressly states in the preamble to the Rule that any substance that falls within any of the broad generic classes is a hazardous substance under Section 101(14) of CERCLA. EPA's interpretation is reasonable and consistent with the plain words of Section 101(14), and therefore is entitled to deference.

*Id.* at 183. The court adopted the EPA's interpretation of its regulations and concluded that the generic categories, such as "chromium and compounds" were listed hazardous substances under CERCLA. *Id.* The court further held that if some of the constituents of the waste are

3

"listed hazardous substances" under 40 C.F.R. § 302.4(a), it is not necessary to consider Section 302.4(b) and its provisions for determining whether an unlisted hazardous waste is hazardous. *Id.* at 184. The court also rejected the argument that the hazardous elements must be in solution to be hazardous. *Id.* at 184-85.

A similar analysis is found in *State of Arizona v. Motorola, Inc.*, 774 F. Supp. 566 (D. Ariz. 1991). The defendant in that case generated waste that included metal grinding sludge, consisting of a mixture of waste oil and various metal particles, including alloys containing chromium, nickel, and zinc. The court held that the waste oil mixture was a hazardous substance under CERCLA. *Id.* at 571-72. In reaching this conclusion the court rejected the defendant's argument that because the sludge was not on the list, it could not be considered a hazardous substance unless it exhibited the hazardous waste characteristics. *Id.* at 571-72.

> That Allied's grinding sludge is not listed in Table 302.4 is not determinative for, as previously noted, Allied's grinding sludge must be evaluated on the basis of what it contains; if a waste material contains a hazardous substance – regardless of the volume or concentration – then the waste itself is hazardous for purposes of CERCLA.

*Id.* at 572. The court also rejected the defendant's argument that the alloys were not hazardous because they would not break down into their constituent elements under normal conditions. *Id.* at 574.

Subsequent decisions have followed these essential holdings of *City of New York* and *State of Arizona*. *See United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 717, 720 (2d Cir. 1993) (holding that waste oil which included small aluminum shavings containing lead, copper, chromium, zinc, and cadmium compounds was a hazardous substance, without

4

regard to quantity); *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 266-67 (3d Cir. 1992) (holding that waste oil mixed with alloys containing hazardous elements was a hazardous substance, regardless of the quantity); *Organic Chem. Site PRP Group*, 58 F. Supp. 2d at 763-64 (denying summary judgment on the basis of the petroleum exclusion where there were issues of fact concerning the presence of hazardous substances in the oil).

The Court concludes that waste oil containing particles of metal alloys that include hazardous substances is a hazardous substance. Because there is some evidence that ROI's metal shavings included hazardous substances, there is a genuine issue of fact for trial as to whether hazardous substances were released at the NBFF OU1 Site while ROI carried on its manufacturing operations there. Accordingly, ROI's motion for summary judgment on Plaintiff's CERCLA claim relating to the NBFF OU1 Site will be denied.

**II.**

ROI has also moved this Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims under Part 201 of the Natural Resources and Environmental Protection Act, Mich Comp. Laws § 324.20101 *et seq.*, if this Court grants summary judgment on Plaintiff's CERCLA claim. Because this Court is not granting ROI's motion for summary judgment motion, this request is moot.

An order consistent with this opinion will be entered.

Dated: <u>July 28, 2009</u>　　　　　　　　　　　　　/s/ Robert Holmes Bell　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　ROBERT HOLMES BELL
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE