UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ITT CORPORATION, an Indiana corporation,

    Plaintiff,

v.

BORGWARNER INC., a Delaware corporation,
et al.,

    Defendants.

                                          /

File No. 1:05-CV-674

HON. ROBERT HOLMES BELL

# **O P I N I O N**

Cross-Defendant L.A. Darling Company moves the Court for summary judgment on Plaintiff ITT's cross-complaint against L.A. Darling Company. (Dkt. No. 241.) For the reasons that follow the motion will be denied.

## I.

This case involves the two Superfund sites, the North Bronson Industrial Area Site ("NBIA" Site), and the North Bronson Former Facilities Site ("NBFF" Site). The NBIA Site consists of municipal wastewater lagoons and a county drain. The NBFF Site includes three Operable Units ("OU") consisting of the industrial properties formerly used by Bronson ReelCompany (NBFF OU1), L.A. Darling (NBFF OU2) and Scott Fetzer (NBFF OU3).

Plaintiff ITT is a successor-in-interest to the former Bronson Reel Company. In 2002 Plaintiff ITT executed an Administrative Order on Consent ("AOC") with the U.S. EPA

regarding NBFF OU1 ("ITT AOC"). The AOC required Plaintiff to perform an investigation to determine the nature and extent of TCE contamination in groundwater caused by the release or threatened release of TCE from NBFF OU1.[1] L.A. Darling executed a separate AOC with the U.S. EPA regarding the NBFF OU2 Site.

In 2005 Plaintiff initiated this action against entities associated with the NBFF OU1 site as current and/or former owners and/or operators for recovery of environmental response costs incurred by ITT for its investigation at the NBFF OU1 Site. In June 2008, Plaintiff filed a cross-complaint against L.A. Darling for the same costs. (Dkt. No. 114, Cross-Compl.) Plaintiff alleges that L.A. Darling's releases of hazardous substances, including TCE, have caused a release and/or a threatened release of hazardous substances onto the NBFF OU1 Site. (Cross-Compl. ¶ 16.) L.A. Darling has filed a counterclaim against ITT seeking contribution from ITT with respect to response costs incurred at NBFF OU1

---

[1] The stated purpose of the AOC was as follows:

> In entering into this Consent Order, the objectives of U.S. EPA and the Respondent are: (a) to determine the nature and extent of TCE contamination in groundwater caused by the release or threatened release, if any, of TCE from OU1 (excluding the industrial sewer) by conducting a remedial investigation; (b) to determine and evaluate alternatives for remedial action (if any) to prevent, mitigate or otherwise respond to or remedy identified risks from OU1 related contamination other than that determined to be caused by the industrial sewer or other off-site sources; and (c) to provide for the recovery of response and oversight costs incurred by U.S. EPA with respect to this Consent Order.

(Dkt. No. 242, Ex. M, ITT AOC 3.)

pursuant to § 113(f) of CERCLA.[2]

## II.

L.A. Darling has moved for summary judgment on Plaintiff ITT's cross-complaint because: (1) L.A. Darling did not cause a release or threatened release at NBFF OU1 which caused ITT to incur any response costs; (2) the claimed response costs for investigation were the direct result of the historical manufacturing operations at NBFF OU1; and (3) ITT voluntarily expanded the scope of its investigation beyond what was required pursuant to the AOC.

To recover under § 107(a) of CERCLA, ITT must show that (1) NBFF OU1 is a "facility"; (2) there has been a "release" or "threatened release" of a hazardous substance; (3) the release has caused ITT to incur "necessary costs of response" that are "consistent" with the NCP [National Contingency Plan]; and (4) L.A. Darling is in one of four categories of potentially responsible parties. *See Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2006) (citing *Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 541 (6th Cir. 2001)).

L.A. Darling contends that in a two-site case such as this, ITT must establish a causal

---

[2]"The liability standard for contribution claims is the same as the standard for cost recovery claims." *Kalamazoo River Study Group v. Menasha Corp.*, 228 F.3d 648, 656 (6th Cir. 2000).

3

connection between L.A. Darling's alleged release of hazardous substances and ITT's response costs.

In *Kalamazoo River Study Group v. Rockwell International Corp.*, 171 F.3d 1065 (6th Cir. 1999), the Sixth Circuit held that

> In a "two-site" case such as this, where hazardous substances are released at one site and allegedly travel to a second site, in order to make out a prima facie case, the plaintiff must establish a causal connection between the defendant's release of hazardous substances and the plaintiff's response costs incurred in cleaning them up.

*Id.* at 1068. A possibility of such a causal connection is not sufficient. *Id.* at 1072.

Plaintiff ITT contends that this is not a two-site case because the NBFF is a single Site with three operable units, and L.A. Darling's release of TCE to NBFF OU2 is within the same "Site" as NBFF OU1. It appears to this Court that the term "two-site" as used in *KRSG v. Rockwell*, 171 F.3d at 1068, refers informally to two separate properties, rather than to the EPA's formal characterization of a Superfund "Site." Accordingly, the Court agrees with L.A. Darling that this case should be analyzed as a "two-site" case because it requires evidence of migration of hazardous substances from one property to another.

L.A. Darling contends that Plaintiff cannot establish that L.A. Darling was a cause of the investigation costs incurred by ITT with respect to NBFF. The L.A. Darling property (NBFF OU2) is not contiguous to NBFF OU1. It is located approximately 1,200 feet to the east/northeast of NBFF OU1. L.A. Darling has presented evidence that although L.A. Darling released TCE, the TCE it released would not have reached the NBFF OU1 Site

because the groundwater flow is predominantly toward the northwest, away from the NBFF OU1, and to the extent it flowed toward NBFF OU1, it would have dissipated prior to reaching NBFF OU1. (Dkt. No. 242, LAD's Mot. for Summ. J., Ex. N, Sklash Expert Report 9-12.) L.A. Darling also contends that there is no evidence that it used or discharged TCE prior to 1950, and that any TCE it released from 1950 on would have been released into the industrial sewer that flowed north toward the eastern lagoons rather than into the old industrial sewer that flowed westward toward NBFF OU1. (*Id.* at 12-13.)

The evidence is not as straightforward as L.A. Darling suggests. Several expert witnesses have rejected Dr. Sklash's opinion that L.A. Darling's TCE releases have dissipated prior to reaching NBFF OU1, and have concluded that it is more likely than not that L.A. Darling's TCE releases have impacted NBFF OU1. (Dkt. No. 261, Pl. Ex. 6, Wells Rebuttal 4; Pl. Ex. 11, Blickle Rebuttal 14-17; Pl. Ex. 12, Stephens Rebuttal 12-13.) Although there is no historical record of L.A. Darling's TCE use, there is evidence that TCE was used in industry prior to 1950, and that TCE was found in the western industrial sewer upstream from both Scott Fetzer and the NBFF OU1 Site. (Pl. Ex. 6, Wells Rebuttal 5-6; Pl. Ex. 12, Stephens Rebuttal 14.) Accordingly, the Court finds that there are issues of fact as to whether the TCE released by L.A. Darling migrated to the NBFF OU1 Site.

Even if there is a question of fact as to whether L.A. Darling's TCE reached the NBFF OU1 Site, L.A. Darling nevertheless contends that it is entitled to summary judgment because releases of hazardous substances at NBFF OU1, including releases of TCE, would have

5

required the same investigation. L.A. Darling has presented evidence that there was an on-site source of TCE at NBFF OU1, and Plaintiff ITT has not incurred any additional response costs beyond those are directly attributable to on-site sources of contamination originating form NBFF OU1 as opposed to any off-site sources. L.A. Darling contends that it was the historical operations at NBFF OU1, not the releases from L.A. Darling, that were the wholly sufficient cause of Plaintiff's investigation costs.

This Court previously rejected the contention that in order to be liable, a particular PRP's release must have been the "impetus" for the response costs. (Dkt. No. 223, 3/31/2009 Op. 7.) Contrary to L.A. Darling's contentions, the issue is not whether the same investigation would have been required even without additional contamination from L.A. Darling. As noted in *KRSG v. Menasha*, the relevant inquiry is whether each defendant discharged contaminants to the site-not whether it discharged contaminants to the site in sufficient quantity to have justified the incurrence of response costs. 228 F.3d at 658. Even in a two-site case, the relevant inquiry is whether the evidence is sufficient to allow a finding that it is more probable than not that the off-site entity caused contamination at the Site. *KRSG v. Rockwell*, 171 F.3d at 1072-73. *See also Artesian Water Co. v. Gov't of New Castle County*, 659 F. Supp. 1269, 1283 (D. Del. 1987) (rejecting a "but for" rule of causation and holding that if the defendant's release or threatened release of contaminants was a substantial factor in causing the plaintiff to incur costs, the defendant could not escape liability merely because other causes contributed to the result).

There is sufficient evidence to create a question of fact as to whether L.A. Darling has caused a release or threatened release of TCE at NBFF OU1. Accordingly, L.A. Darling's motion for summary judgment on the basis that it did not cause a release or threatened release at NBFF OU1 which caused ITT to incur any response costs will be denied.

## III.

L.A. Darling contends that it is also entitled to summary judgment because Plaintiff voluntarily expanded the scope of its investigation at NBFF OU1 beyond what was required pursuant to the ITT AOC.

Under CERCLA § 107(a), recoverable response costs are only those that are "necessary" and "consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). "Costs are 'necessary' if incurred in response to a threat to human health or the environment." *Reg'l Airport Auth. of Louisville*, 460 F.3d at 703. Thus, even if some of the investigation conducted by Plaintiff went beyond the requirements of the AOC, that would not necessarily mean that the investigation was not necessary or consistent with the national contingency plan. Whether Plaintiff's costs were necessary and consistent is an issue of fact for trial. Moreover, L.A. Darling does not suggest that none of Plaintiff's investigation costs were necessary and consistent. Accordingly, L.A. Darling's motion for summary judgment on the basis that Plaintiff voluntarily expanded the scope of its investigation beyond what was required pursuant to the AOC will be denied.

7

## IV.

In the alternative, L.A. Darling moves for partial summary judgment that it cannot be held liable for costs related to Plaintiff's investigation of metals and total petroleum hydrocarbons ("TPH") at NBFF OU1 because these costs are divisible and there is neither a claim nor evidence to support a claim that L.A. Darling caused a release or threatened release of metals or TPH at NBFF OU1.

CERCLA imposes joint and several liability "when the environmental harm is indivisible," and allows for apportionment "when two or more persons independently are responsible for a single harm that is divisible." *United States v. Twp. of Brighton*, 153 F.3d 307, 317 (6th Cir. 1998) (quoting *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1507 (6th Cir.1989)). "[A]pportionment is proper when 'there is a reasonable basis for determining the contribution of each cause to a single harm.'" *Burlington N. and Santa Fe Ry. Co. v. United States*, 129 S. Ct. 1870, 1881 (2009) (quoting Restatement (Second) of Torts § 433A(1)(b), p. 434 (1963-1964)). "CERCLA defendants seeking to avoid joint and several liability bear the burden of proving that a reasonable basis for apportionment exists." *Id.*

Plaintiff contends that because divisibility is not a defense to CERCLA liability, but only a defense to joint and several liability under CERCLA § 107(a), divisibility is not an appropriate consideration unless and until CERCLA § 107(a) liability is determined. In addition, Plaintiff contends that there are issues of fact regarding the degree to which L.A.

Darling caused the response costs and its contribution of metals through the western industrial sewer from 1939 to 1949.

L.A. Darling has presented a plausible basis for apportionment in this case. However, at least one case has held that in light of the "intensely factual nature of the 'divisibility' issue" it was error to grant judgment prior to an evidentiary hearing. *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 269 (3d Cir. 1992). Given the fact that much of L.A. Darling's evidence in support of divisibility is found in its reply brief rather than in its original motion, the Court, in an abundance of caution, will deny L.A. Darling's motion for partial summary judgment on divisibility so that the evidentiary record can be more fully developed.

For the reasons stated herein, L.A. Darling's motion for summary judgment, will be denied.

An order consistent with this opinion will be entered.


Date:   July 29, 2009                    /s/ Robert Holmes Bell
                                        ROBERT HOLMES BELL
                                        UNITED STATES DISTRICT JUDGE